**L. Bland McREYNOLDS and Judith Bauman, Appellants**

v.

**Lanelle ELSTON, Appellee.**

**In re L. Bland McReynolds and Judith Bauman, Relators.**

**Nos. 14–06–00974–CV, 14–06–00980–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 27, 2007.

Kevin Dubose and John H. Boswell, Houston, for appellants.

Alex Jerome Brown, Emilio F. Deayala, and Marc E. Grossberg, Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

LESLIE B. YATES, Justice.

In this consolidated interlocutory appeal and mandamus proceeding, appellants L. Bland McReynolds and Judith Bauman challenge the trial court's order denying their motion to compel arbitration. We deny the petition for writ of mandamus and reverse and remand the trial court's order under our interlocutory appellate jurisdiction.

## BACKGROUND

This proceeding arises from a dispute over competing arbitration agreements. On March 1, 1997, McReynolds and Elston executed an agreement incident to their divorce creating a limited partnership ("Partnership Agreement") whose "sole intent and purpose" was to "liquidate all of the partnership assets ... and distribute the proceeds." The partnership assets listed in the agreement consist of the parties' community property and include, among other things, a large tract of real property (the "242 Tract"). The agreement names McReynolds as general partner and grants him authority to control the partnership assets and, upon dissolution, to liquidate and sell or distribute the assets; however, it does not expressly itemize transactions that will effect liquidation of the assets. The agreement names Elston as a limited partner and gives her various rights to the assets. The agreement also contains the following arbitration clause:

If a dispute among the Partners arises out of or relates to this Partnership, or the breach of this Agreement, and if the dispute cannot be settled through direct discussions, the parties agree to first

endeavor to settle the dispute in an amicable manner by mediation under the Commercial Mediation Rules of the American Arbitration Association, before resorting to arbitration. Thereafter, any unresolved controversy or claim arising out of or relating to this Partnership or breach of this Agreement, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

The partnership terminated on December 31, 1998 and subsequently entered liquidation. At some point thereafter, a dispute arose, and Elston initiated arbitration against McReynolds pursuant to the Partnership Agreement, alleging he "improperly liquidat[ed] Partnership assets and treat[ed] them as his sole property." As a result of this arbitration, on August 18, 1999, the parties entered into a "Settlement Agreement and Full and Complete Joint and Mutual Release" ("Settlement Agreement") to "settle[ ] the issues relating to the various claims made or that could have been made." The Settlement Agreement is multifaceted and contains numerous provisions relating to the partnership and liquidation of the assets. First, the agreement specifically outlines how each partnership asset should be liquidated and contains residual language stating that Elston "quitclaims to McReynolds all other assets of and interests in Partnership assets not disposed of herein." To this end, the agreement states that "[t]he transfers contemplated by the settlement are intended to effect the liquidation and dissolution of the Partnership by distribution of all its assets and the payment or assumption of all its liabilities." Second, the agreement releases "all ... claims [by McReynolds and/or Elston] relating to ... the Partnership and any and all other matters relating to assets or liabilities of McReynolds, Elston, or the Partnership."[1]

---

1. The Settlement Agreement also contains the following release language:

Elston ... does hereby RELEASE, ACQUIT AND FOREVER DISCHARGE [McRey-

Finally, the Settlement Agreement contains an arbitration clause of its own:

> In the event of any dispute under this Settlement Agreement or any matter relating hereto ... the parties agree to submit each dispute to Daniel Goldberg, for binding disposition.... If the parties cannot agree on the rules and procedures for the arbitration then the AAA Rules for Commercial Disputes shall apply.... If Dan Goldberg is unable to act as the arbitrator and the parties cannot agree on the selection of an arbitrator[,] the arbitrator shall be selected pursuant to the AAA Rules.

Some years later, a further dispute arose between Elston and McReynolds. On October 5, 2005, pursuant to the Partnership Agreement's arbitration clause, Elston filed a claim with the American Arbitration Association (the "AAA Arbitration") against McReynolds and his current wife, Judith Bauman (collectively "McReynolds"), asserting breach of fiduciary duty, breach of contract, and fraud. Elston contended that in November 1997, McReynolds and his business associate purchased for themselves a 68–acre tract of real property for timber, which was surrounded by the partnership's 242 Tract and thus landlocked. Elston alleged McReynolds engaged in the following improper conduct in connection with the purchase: (1) failing to disclose this "partnership opportunity" during the term of the partnership and "potentially" improperly using partnership funds to acquire the tract, (2) inducing her into executing the Settlement Agreement by denying ownership of any other property in his deposition for the arbitration resulting in the agreement, (3) in the years

after the settlement, overcharging her for her share of the partnership expenses on the 242 Tract by failing to segregate amounts for the 68–acre tract, and (4) failing to disclose his interest in the 68–acre tract until after he executed a contract with her for the sale of a larger partnership tract containing the 68–acre tract.

Thereafter, on October 23 or 24, 2005, McReynolds filed objections to the AAA Arbitration, and, subject to the objections, an answer and counterclaims. McReynolds objected (1) that the acquisition of the 68–acre tract fell outside the scope of the Partnership Agreement's arbitration clause, requesting "a factual and legal determination whether the purported Arbitration Agreement is binding on the parties to this claim," (2) to the "involvement" of the AAA, alleging that Elston's current husband, an attorney of record in the claim, had close ties to the designated three-arbitrator panel and other AAA employees, and (3) to the use of a three-arbitrator panel instead of a single arbitrator. McReynolds's counterclaims included causes of action for libel, slander, breach of contract, and intentional infliction of emotional "trauma."

The record reflects that over the next eight months, McReynolds, through his attorney, John H. Boswell, reasserted his objections in correspondence to the case manager handling the AAA Arbitration. On March 29, 2006, Boswell explained that Elston improperly brought the arbitration before an AAA panel under the Partnership Agreement rather than before Daniel Goldberg under the Settlement Agreement

---

nolds] and the Partnership of and from any and all claims, demands, causes of action, damages, loss, or expense, of whatsoever kind or character, in tort or in contract, under the statutes, constitutions, or the common law, state or federal, including, but not limited to, causes of action that may

be created or recognized after this date by court decision, statute or regulation, which have been or could have been asserted as one of Elston's Claims, whether known or unknown, existing as of the date of execution hereof and not including Claims arising out of this Settlement Agreement.

(the "Goldberg Arbitration"). Boswell thus sought dismissal of the AAA Arbitration, absent an explanation from Elston's attorneys regarding why the Partnership Agreement controlled. On May 15, 2006, Boswell again informed the case manager that the AAA Arbitration was improper under the Settlement Agreement and warned that McReynolds would seek injunctive relief against Elston if the matter could not be resolved. Thereafter, on June 28, 2006, the AAA panel conducted a "preliminary hearing and initial case management conference," which set dates for both the hearing on McReynolds's objections and the final evidentiary hearing for Elston's claim. Pursuant to the objections, neither McReynolds nor Boswell participated in this conference. Rather, on the same day, because of the AAA's "failure to acknowledge the clear terms of the Settlement Agreement," McReynolds filed a declaratory judgment action in district court requesting the court to stay the AAA Arbitration and compel Elston to engage in arbitration under the Settlement Agreement.

The AAA panel then heard McReynolds's objections on July 28, 2006 and subsequently overruled them. Thereafter, on September 28, 2006, McReynolds filed a motion to compel the Goldberg Arbitration pursuant to the Settlement Agreement and to dismiss or stay the AAA Arbitration in district court. He maintained that he "repeatedly requested that [Elston] submit to contractual arbitration in accordance with [the Settlement Agreement], but she has refused." After a hearing, the court denied the motion on October 24, 2006.[2]

McReynolds now challenges the court's denial of his motion to compel the Goldberg Arbitration and stay the AAA Arbitration, seeking relief through a petition for writ of mandamus, or, alternatively, an interlocutory appeal.

## ANALYSIS

### I. Mandamus vs. Interlocutory Appeal

■ We initially address whether we should review the interlocutory order denying McReynolds's motion under our interlocutory[3] or mandamus jurisdiction. The parties agree that the facts of this case are atypical, if not unique—a party simultaneously seeks to compel arbitration under one agreement and stay arbitration initiated under another agreement. McReynolds claims we have interlocutory jurisdiction over denial of the "motion to compel" relief because the Texas Arbitration Act ("TAA") expressly grants interlocutory jurisdiction over denials of applications to compel arbitration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1) (Vernon 2005). McReynolds further contends that, because the TAA requires orders compelling arbitration to include a stay of other proceedings subject to the arbitration, we have by extension interlocutory jurisdiction to review a denial of the "motion to stay" relief. *See*

---

**2.** McReynolds then filed an emergency motion for temporary relief with this court, seeking a stay of the AAA Arbitration set for November 7, 2006. We granted his motion on November 3, 2006, pending our final resolution of this proceeding.

**3.** Neither arbitration agreement specifies whether the Texas Arbitration Act or the Federal Arbitration Act governs; however, the parties agree that because neither agreement invokes interstate commerce, the federal act does not apply. *See In re Educ. Mgmt. Corp.,* 14 S.W.3d 418, 422 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding) (holding that question of whether transaction affects interstate commerce, and thus whether federal act governs, is one of fact where arbitration agreement is silent as to application of federal or Texas act). Therefore, we address whether we have interlocutory jurisdiction only under the Texas Arbitration Act.

*id.* § 171.021(c) (Vernon 2005). Elston counters that, because McReynolds's motion sought to stay pending arbitration and compel arbitration before a different arbitrator, the court's order did not deny the "right to arbitration" but merely allowed pending arbitration to continue. Therefore, Elston reasons, the trial court's order does not squarely fall under either TAA section 171.098(a)(1) or section 171.098(a)(2), which provides for appeals from grants of applications to stay arbitration made under 171.023 section. *See id.* § 171.098(a)(2) (Vernon 2005). As to mandamus, McReynolds concedes that he believes his challenge to the trial court's order is appropriate for interlocutory appeal but has filed the mandamus proceeding "in an abundance of caution."

We will first discuss our interlocutory jurisdiction. We have jurisdiction to consider appeals of interlocutory orders only if a statute explicitly so provides. *See Stary v. DeBord,* 967 S.W.2d 352, 352–53 (Tex.1998). The TAA explicitly provides that a party may file an interlocutory appeal from the denial of an application to compel arbitration brought under section 171.021. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1). Under section 171.021, the court must, upon granting an application to compel arbitration, stay "any proceeding subject to Section 171.025." *See id.* § 171.021(c). Section 171.025 requires the court to stay a "proceeding that involves an issue subject to arbitration," and such stay "applies only to the issue subject to arbitration if that issue is severable from the remainder of the proceeding." *See id.* § 171.025 (Vernon 2005).

We disagree with Elston's contentions that the trial court's order did not deny McReynolds the "right to arbitration" and that an appeal from the denial of his motion does not fall under section 171.098(a)(1) of the TAA. The substance and function of the order viewed in the context of the record controls our interlocutory jurisdiction. *See Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.,* 95 S.W.3d 511, 515 (Tex.App.-Houston [1st Dist.] 2002, no pet.). The record indicates McReynolds sought not simply to change arbitrators, but rather to enforce his express contractual right of arbitration under the Settlement Agreement, including arbitration before Daniel Goldberg. The motion to compel the Goldberg Arbitration constitutes the predominant relief sought in McReynolds's motion, which is evidenced by the trial court's order entitled "ORDER DENYING PLAINTIFFS' MOTION TO COMPEL ARBITRATION." As such, although the trial court's order allowed the AAA Arbitration to continue, it denied McReynolds's potential contractual right to arbitration under the Settlement Agreement.

Moreover, in relation to McReynolds's request to compel the Goldberg Arbitration, he asked the court to stay a related proceeding involving arbitrable issues—the AAA Arbitration. Parties moving to compel arbitration often simultaneously request the trial court to stay related proceedings—albeit typically the court's own litigation proceedings—and thereafter appeal from an order denying such relief under Section 171.098. *See Williams Indus., Inc. v. Earth Dev. Sys. Corp.,* 110 S.W.3d 131, 133 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (noting that section 171.098(a)(1) authorizes interlocutory appeal from denial of application to compel arbitration and to stay proceedings); *see, e.g.,Southwind Group, Inc. v. Landwehr,* 188 S.W.3d 730, 735–36 (Tex.App.-Eastland 2006, orig. proceeding); *Teal Constr. Co./Hillside Villas Ltd. v. Darren Casey Interests, Inc.,* 46 S.W.3d 417, 419 & n. 1 (Tex.App.-Austin 2001, pet. denied). Accordingly, under these circumstances, we hold that section 171.098(a)(1) of the TAA

grants us jurisdiction to review the trial court's denial of McReynolds's motion to compel the Goldberg Arbitration and stay the AAA Arbitration.

Because we have jurisdiction to hear the interlocutory appeal under the TAA, and an adequate remedy by appeal therefore exists, we accordingly deny McReynolds's petition for writ of mandamus. *See TMI, Inc. v. Brooks*, No.14–05–00604–CV, 2007 WL 43814, at *8 (Tex.App.-Houston [14th Dist.] Jan. 9, 2007, orig. proceeding).

**II. Motion to Compel the Goldberg Arbitration**

■ We now turn to the merits of the appeal to determine whether the trial court erred in denying McReynolds's motion to compel the Goldberg Arbitration and stay the AAA Arbitration. Under the TAA, a party moving to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims asserted fall within the scope of that agreement. *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 581 (Tex.App.-Houston [14th Dist.] 1999, no pet.). If the movant establishes that an arbitration agreement governs the dispute, the burden then shifts to the party opposing arbitration to establish a defense to the arbitration agreement. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999) (orig. proceeding). A party may revoke the agreement only on a ground that exists at law or in equity for the revocation of a contract. TEX. CIV.

PRAC. & REM. CODE ANN. § 171.001 (Vernon 2005). If the trial court concludes the movant has met its burden and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration. *See Brooks*, 2007 WL 43814, at *3.

In reviewing a denial of a motion to compel arbitration, we review factual conclusions under a legal sufficiency or "no evidence" standard and legal conclusions de novo. *See Valero*, 2 S.W.3d at 581. When the legal interpretation of the arbitration clause, and no fact issue is before the court, de novo review is appropriate. *See id.* at 582.

■ The parties do not dispute the existence of the Settlement Agreement's arbitration clause.[4] They instead disagree over whether Elston's claims fall within the scope of this clause and whether McReynolds waived his right to compel the Goldberg Arbitration and stay the AAA Arbitration. We address each issue in turn.

**A. Scope of the Settlement Agreement's Arbitration Clause**

■ McReynolds contends that Elston's claims fall under the scope of the Settlement Agreement's arbitration clause because the clause purports to cover "any dispute under this Settlement Agreement or any matter relating hereto," which language courts have interpreted broadly. McReynolds further maintains the Settle-

4. Elston makes passing reference to her "fraud in the inducement" claim in her briefing on the scope of the Settlement Agreement's arbitration clause. She appears to refer to her claim that McReynolds fraudulently induced her into signing the Settlement Agreement by both failing to disclose and affirmatively denying his ownership of other property, namely the 68–acre tract. We construe this as an argument that McReynolds's alleged fraud induced her to enter the entire agreement, not the arbitration clause itself. Accordingly, we conclude that the arbitrators, not this court, should properly decide this issue. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex.2001) (orig. proceeding); *Dewey v. Wegner*, 138 S.W.3d 591, 602 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Therefore, to the extent she attempts to challenge the existence of the Settlement Agreement's arbitration clause by attacking the validity of the entire agreement, we overrule her contention.

ment Agreement, because it provides "final closure of the Partnership" and contains broad release language, superseded the Partnership Agreement either entirely or to the extent the arbitration clauses conflict. Thus, he concludes the arbitration clause in the Settlement Agreement controls. Elston responds that, because the dispute turns on whether the 68–acre tract constitutes a partnership asset, the arbitrator(s) must interpret the Partnership Agreement, not the Settlement Agreement, and thus the Partnership Agreement's arbitration clause applies. Alternatively, Elston argues that her claims relate to the breach of a duty under the Partnership Agreement "to enhance Partnership Assets or otherwise protect or enhance the business of the Partnership," which claims accrued after the parties executed the Settlement Agreement when McReynolds diluted the value of the 242 Tract by selling it along with the 68–acre tract. Elston reasons that, since the 68–acre tract did not constitute a partnership asset and the Settlement Agreement's arbitration clause applies only to claims related to partnership assets, her claims do not fall under this provision.

■■■■ Determining whether a claim falls within the scope of an arbitration agreement involves the trial court's legal interpretation of the agreement, and we review such interpretations de novo. *See Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 694 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (orig. proceeding). In our review, we focus on the factual allegations of the complaint rather than the legal causes of action asserted. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995) (orig. proceeding). The burden lies with the party opposing arbitration to show that the claims fall outside the scope of the arbitration agreement. *Id.* There is a presumption favoring arbitration, which generally requires that we resolve doubts as to the scope of the agreements in favor

of coverage. *See Valero*, 2 S.W.3d at 590. Thus, a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that would cover the dispute at issue. *Williams Indus., Inc.*, 110 S.W.3d at 137. "The presumption of arbitrability is particularly applicable where the clause is broad; that is, it provides for arbitration of 'any dispute arising between the parties,' or 'any controversy or claim arising out of or relating to the contract thereof,' or 'any controversy concerning the interpretation, performance or application of the contract.' " *Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 230 (Tex.App.-Houston [14th Dist.] 1993, writ denied). However, the presumption is not without limits and cannot serve to stretch a contractual clause beyond the scope intended by the parties or authorize an arbitrator to disregard or modify the plain and unambiguous provisions of the agreement. *Id.*

We conclude that Elston, in contending that her claims fall under the Partnership Agreement's arbitration clause, failed to meet her burden to show that her claims fall outside the scope of the Settlement Agreement's arbitration clause. The totality of the language in the Settlement Agreement reveals that it supersedes the Partnership Agreement, at least to the extent the two agreements conflict. For example, the Partnership Agreement generally discusses the liquidation and distribution of partnership assets, while the Settlement Agreement specifically outlines how each asset should be liquidated and includes a broad residual clause covering all other partnership assets not expressly addressed. Indeed, the Settlement Agreement expressly states that the transfers are intended to "effect" the liquidation and dissolution of the Partnership, which was the "sole intent and purpose" of the Partnership Agreement. Moreover, the Settlement Agreement broadly releases claims

"relating to" the Partnership and "all other matters relating to assets or liabilities of McReynolds, Elston, or the Partnership." Accordingly, to the extent the Settlement Agreement's arbitration clause conflicts with the Partnership Agreement's clause—by requiring arbitration before Daniel Goldberg—the Settlement Agreement controls. *See Transcore Holdings, Inc. v. Rayner*, 104 S.W.3d 317, 322–23 (Tex.App.-Dallas 2003, pet. denied) (orig. proceeding) (holding that parties did not intend to be bound by arbitration agreement in prior agreement, given that later agreement contained broad release of "any and all claims" and provision requiring parties to bring any action "arising out of, or relating to" later agreement in court); *Courage Co., L.L.C. v. Chemshare Corp.*, 93 S.W.3d 323, 333 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (holding that when later contract deals with same subject matter as initial contract made by same parties, but does not specify whether or to what extent it is intended to operate in discharge or substitution, both contracts must be interpreted together, and, to extent they are inconsistent, later one prevails).

Furthermore, the Settlement Agreement's arbitration clause itself contains sweeping language encompassing Elston's claims, as the agreement purports to cover claims arising under that agreement or "any matter relating hereto." Courts have interpreted such language to require only that a claim "touch upon" or be "factually intertwined" with matters covered by the arbitration agreement. *See Marshall*, 909 S.W.2d at 900; *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 195–96 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding); *see also Pennzoil Exploration &*

*Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir.1998) (noting that such language is "capable of expansive reach"). Each of Elston's allegations involve, either directly or indirectly, the acquisition, sale, and distribution of partnership assets, which clearly relate to, touch upon, and are factually intertwined with the Settlement Agreement's subject matter. *See Marshall*, 909 S.W.2d at 900; *Dewey v. Wegner*, 138 S.W.3d 591, 602–03 (Tex. App.-Houston [14th Dist.] 2004, no pet.). As such, given the breadth of the Settlement Agreement and its arbitration clause, and the strong presumption in favor of arbitration, we cannot say with positive assurance that such clause is not susceptible of an interpretation covering Elston's claims.

**B. Waiver**

Elston further contends McReynolds waived his right to stay the pending arbitration by "participating in the arbitration for a year before filing the motion [to stay the AAA arbitration]." McReynolds counters that he expressly took each action in the AAA Arbitration "subject to" his original objections, which he filed less than twenty days after Elston initiated the proceeding. Whether a party has waived its right to arbitrate presents a question of law that we review de novo. *Sedillo v. Campbell*, 5 S.W.3d 824, 826 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding). Waiver of an arbitration right must be intentional. *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex.1996) (orig. proceeding). Merely taking part in litigation is not enough unless a party has (1) substantially invoked the judicial process (2) to its opponent's prejudice. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex.2006) (orig. proceeding).[5] Be-

---

5. We recognize that both state and federal waiver cases typically involve an allegation that a party waived its contractual right to arbitration by substantially invoking the "judicial" process in parallel litigation. Never-

theless, we find such cases applicable in this unusual but analogous context, involving an allegation that a party waived its contractual right to arbitration by substantially invoking

cause of the strong federal and state policies favoring arbitration, a presumption exists against the waiver of a contractual right to arbitration. *See Marshall,* 909 S.W.2d at 898.

### 1. Substantial Invocation of the AAA Arbitration

Elston claims the following actions establish that McReynolds substantially invoked the AAA Arbitration: (1) waiting an "inordinate" amount of time to file the motion to stay the AAA Arbitration, which McReynolds filed after the AAA panel heard his objections to the arbitration, (2) filing a counterclaim and paying the filing fee, (3) requesting documents from the AAA and complying with AAA panel's order to produce documents, (4) allowing the AAA to pre-screen arbitrators and objecting to arbitrators chosen for the panel, (5) participating in a conference call to discuss the appointment of the panel, scheduling, discovery, and other parameters of the arbitration, and (6) requesting the AAA panel for a factual and legal determination of whether the Partnership Agreement's arbitration clause controlled.

To substantially invoke the judicial process, a party must make a specific and deliberate act after suit has been filed that is inconsistent with its right to arbitrate. *Sedillo,* 5 S.W.3d at 827. Thus, a party does not demonstrate an intent to waive arbitration by consistently and timely seeking to invoke its contractual right to arbitration. *See Marshall,* 909 S.W.2d at 898. Similarly, purely defensive measures do not substantially invoke the judicial process. *See Transwestern Pipeline Co. v. Horizon Oil & Gas Co.,* 809 S.W.2d 589, 593 (Tex.App.-Dallas 1991, writ dism'd w.o.j.) (citing filing of general denial to

preclude default judgment and filing of protective order in response to discovery request as examples of defensive measures); *see also In re Serv. Corp. Int'l,* 85 S.W.3d 171, 174 (Tex.2002) (orig. proceeding) (holding that objecting to trial setting showed intent to avoid rather than to judicial process). Delay alone generally does not establish waiver. *In re Vesta Ins. Group, Inc.,* 192 S.W.3d at 763.

We disagree that McReynolds's actions substantially invoked the AAA Arbitration. Elston asserts that McReynolds waited nearly a year from the time she filed the AAA Arbitration to file a motion to stay that proceeding and only after the panel had ruled on his objections. Notwithstanding that McReynolds filed a declaratory judgment seeking a stay of the arbitration before the hearing on his objections, courts have held that delays in asserting contractual rights to arbitration far longer than one year do not constitute waiver. *See id.* (holding that litigating in court for two years did not amount to waiver). Moreover, the record is replete with correspondence and other documents supporting McReynolds's position that he took each action expressly subject to his objections or in an otherwise defensive posturing. McReynolds expressly filed his answer and counterclaims "subject [to]" the objections in the same pleading. *See Courage Co., L.L.C.,* 93 S.W.3d at 337 (finding no waiver where party made jurisdictional objections and sought dismissal in same responsive pleading containing claims on merits because claims on merits were brought subject to court's ruling on jurisdictional objections). Further, the documents McReynolds requested pertained to Elston's husband's potential con-

---

the arbitration process in a parallel or competing arbitration. *Cf. Bergquist Co. v. Sunroc Corp.,* 777 F.Supp. 1236, 1251 (E.D.Pa.1991) (holding that party challenging arbitration award for lack of agreement to arbitrate did

not agree to arbitrate or waive its objection to arbitration proceeding by participating in initial phases of arbitration process because party "had no other choice").

flict with the AAA panel, indicating that such request was defensive and made in support of his objections. Also, even if McReynolds complied with the panel's order to produce documents relating to the 68–acre tract, which is unclear from the record, engaging in minimal discovery does not alone establish waiver. *See In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 783 (Tex.2006) (orig. proceeding); *In re Vesta Ins. Group, Inc.,* 192 S.W.3d at 763. In addition, to the extent Elston suggests McReynolds's objections to the arbitrators amounted to participating in the selection of arbitrators, such actions were made in the context of his objections and request that the AAA panel dismiss the arbitration; thus, they were defensive in nature. *Cf. Bergquist Co. v. Sunroc Corp.,* 777 F.Supp. 1236, 1251 (E.D.Pa.1991) (finding party did not waive objections to arbitration proceeding by participating in selection of arbitrators under express protest that matter was not subject to arbitration). Accordingly, we cannot say that McReynolds's actions in the AAA Arbitration were inconsistent with his right to arbitrate under the Settlement Agreement.

### 2. Prejudice to Elston

 Finally, we note that even if McReynolds substantially invoked the AAA Arbitration, Elston has not shown prejudice sufficient to establish waiver.[6] Elston claims she has suffered prejudice due to McReynolds's delay in filing the motion to stay the AAA Arbitration and "simply by having to fight McReynolds in two forums." Loss of time alone does not constitute sufficient prejudice to establish waiver. *See In re BP Am. Prod. Co.,* 97 S.W.3d 366, 372 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding). Moreover,

generalized complaints about delay and expense, absent explanation and evidentiary support, will not establish prejudice. *See id.; Williams Indus., Inc.,* 110 S.W.3d at 139.

Furthermore, the cases on which Elston relies are distinguishable. *See Cent. Nat'l Ins. Co. of Omaha v. Lerner,* 856 S.W.2d 492, 495 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding); *Marble Slab Creamery, Inc. v. Wesic, Inc.,* 823 S.W.2d 436, 438–39 (Tex.App.-Houston [14th Dist.] 1992, no writ). Those cases involve parties who filed claims or counterclaims and conducted extensive pretrial discovery unavailable in arbitration, causing the opposing parties to incur significant discovery costs and attorney's fees. *See Lerner,* 856 S.W.2d at 495; *Wesic,* 823 S.W.2d at 438. Here, McReynolds did not initiate the AAA Arbitration and thereafter make extensive discovery requests. Rather, Elston initiated the AAA Arbitration, and McReynolds timely filed and repeatedly stood on objections, requesting discovery only to support his objections and submitting to discovery only over objection. Therefore, any costs Elston has incurred are "self-inflicted" in the sense that she incurred them not in response to McReynolds's actions but, rather, largely in her prosecution of the AAA Arbitration over McReynolds's repeated objections. *See In re Vesta Ins. Group, Inc.,* 192 S.W.3d at 763 (finding no prejudice where party sent far more discovery requests than received); *Transwestern Pipeline Co.,* 809 S.W.2d at 593 (finding no prejudice where party voluntarily incurred and assumed liability for legal fees in deciding to initiate and prosecute lawsuit). Moreover, Elston does not suggest that the discovery and

---

**6.** We acknowledge that this and other courts have held that, although waiver is a question of law, the predicate element of prejudice is a question of fact, and courts differ over which standard of review to apply to this question.

*See Williams Indus., Inc.,* 110 S.W.3d at 136 & n. 8. Because these issues do not affect our conclusion, we need not address them. *See generally id.* at 136.

costs incurred in the AAA Arbitration would not inure to the benefit of the Goldberg Arbitration. *See In re Vesta Ins. Group, Inc.,* 192 S.W.3d at 763 (in finding no prejudice, noting that party opposing arbitration made no allegation that pretrial discovery already conducted would not be useful in arbitration); *Transwestern Pipeline Co.,* 809 S.W.2d at 593 (in finding no prejudice, noting that nothing in record showed that litigation expenses would not have been incurred during arbitration or would not have provided benefit to party opposing arbitration in resolving dispute in arbitration).

## CONCLUSION

We conclude the trial court erred in denying McReynolds's motion to compel the Goldberg Arbitration and stay the AAA Arbitration. Elston's claims fall under the scope of the Settlement Agreement's arbitration provision because of the broad nature of the clause and the Settlement Agreement. McReynolds did not waive his right to the Goldberg Arbitration because he did not substantially invoke the AAA Arbitration to Elston's prejudice. Therefore, we sustain McReynolds's issues, and we reverse and remand the trial court's interlocutory order for proceedings consistent with this opinion.