Opinion issued October 13, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00562-CV

———————————

Schlumberger Technology Corporation, Appellant

V.

Baker Hughes
Incorporated,
Appellee



 



 

On Appeal from the 270th District Court

Harris County, Texas



Trial Court Case No. 2011-25539

 



 

O P I N I O N

          Schlumberger
Technology Corporation and Baker Hughes Incorporated are in the midst of an
arbitration proceeding to resolve patent disputes.  A disagreement has arisen about whether the
presiding panel of arbitrators has jurisdiction to determine a discrete
subissue raised by Baker Hughes in the proceeding.  Schlumberger contends that the subissue
should be resolved by the same panel, but Baker Hughes argues that the issue is
governed by a prior settlement agreement between the parties and must be
resolved by the mediator who facilitated that agreement.

Baker Hughes initiated court
proceedings, and both parties filed motions to compel arbitration in accordance
with their respective positions.  The
trial court granted Baker Hughes’s requested relief and denied Schlumberger’s
motion.  Schlumberger now appeals from
the trial court’s interlocutory order that denied its motion to compel
arbitration.  We conclude that we have
jurisdiction over this interlocutory appeal. 
We further conclude that the parties agreed to let the arbitrators resolve
their disagreement about the proper arbitral forum for their dispute and that the
trial court should have compelled arbitration of that issue.  Accordingly, we reverse the trial court’s
order denying Schlumberger’s motion, and we remand for further proceedings consistent
with this opinion.

Background

          Schlumberger
and Baker Hughes are competitors in the business of developing, manufacturing,
and marketing tools for use in the oil and gas industry.  Both own or control patents related to such
tools.  At various times, disputes have
arisen about each party’s alleged infringement of the other’s patents.  One of these disputes involved reciprocal
claims relating to sensor tools used to gather information and fluid samples
from oil and gas wells.  Baker Hughes
claimed that Schlumberger’s tool infringed a certain patent, and Schlumberger
alleged that Baker Hughes’s tool infringed certain of its patents.  The parties mediated this dispute, and in
October 2004 they executed a settlement agreement.  The parties granted each other reciprocal
licenses to the patents at issue in that dispute, and they released and
discharged each other from “any and all claims, demands or suits, known or
unknown, fixed or contingent, liquidated or unliquidated whether or not
asserted in the above case, as of this date, arising from or related to the
events and transactions which are subject matter to this case.”  The 2004 settlement agreement also contained
the following dispute resolution provision:

If a dispute arises with
regard to the interpretation and/or performance of this agreement or any of its
provisions, the parties agree to attempt to resolve same by phone conference
with the Mediator who facilitated this settlement.  If the parties cannot resolve their
differences by telephone conference, then each agrees to schedule a day of
mediation with the Mediator within thirty (30) days to resolve the disputes and
to share the costs of the same equally. 
If a party refuses to mediate, then the parties agree to submit the
issue to binding arbitration before the Mediator in this matter and the party
bringing the arbitration shall be entitled to recover attorney’s fees or costs
in such arbitration.

 

          After
the 2004 settlement agreement was finalized, additional disputes arose between
the parties concerning their intellectual property.  To facilitate efficient resolution of these
disputes, in 2009 the parties entered into two additional agreements: the
Patent Dispute Resolution Agreement and the Patent Dispute Procedure
Agreement.  The Resolution Agreement
provided that its purpose was to address and resolve then-current disputes and
to provide a process for addressing future disputes about the infringement and
validity of each party’s patents.  That
agreement defined “Current Disputes” as “those Disputes for which assertions
have been made prior to the signing of this Agreement,” and it expressly
referenced an attached exhibit that listed the Current Disputes.  The Resolution Agreement also defined
“Dispute” as:

. . . any dispute between
the Parties arising out of or relating to or in connection with a claim of 1)
infringement or the damages arising therefrom, or 2) the invalidity or
unenforceability of either Party’s Patents. 
“Dispute” shall also include disputes relating to the interpretation,
construction, alleged breach of this Agreement, the Procedure Agreement, a license
agreement or covenant not to sue relating to a Patent or Patents, or amounts
paid under such a license agreement or covenant not to sue.  Disputes arising under existing licenses or
covenants not to sue shall be treated in accordance with Section 3.2, below.

 

Schlumberger and Baker Hughes agreed that “any
Current Disputes or future Disputes . . . shall be solely resolved as set forth
in the Procedure Agreement.”

          Section
3 of the Resolution Agreement carved out an exception for disputes arising from
any preexisting patent or license agreement that contained its own dispute
resolution procedures.  By that provision
the parties agreed:

3.       TREATMENT
OF EXISTING AND FUTURE PATENT AGREEMENTS

 

  3.1   Existing,
unexpired patent agreements and licenses between the Parties will remain in
effect and this Agreement and the Procedure Agreement shall have no impact on
their terms, including negotiated royalty rates, royalty base, or restrictions
on field of use.

 

  3.2   Unless
a dispute resolution process is set forth in an existing or future patent
agreement or license, breaches of those agreements shall be subject to
resolution in accordance with the terms of this Agreement.

 

Consistent with this provision, a merger clause
provided that the Resolution Agreement constituted the parties’ “entire
agreement . . . with respect to the same subject matter hereof” and superseded
“all other agreements, whether written or oral except as provided by Section
3.1 . . . .”

          If
direct negotiations should fail to resolve a dispute encompassed by the
Resolution Agreement, the Procedure Agreement specifies resolution by
arbitration before a panel of American Arbitration Association arbitrators,
pursuant to AAA rules.  Pursuant to the
Resolution and Procedure Agreements, the parties began arbitration before a
panel of three AAA arbitrators to resolve a dispute as to whether a module of
Baker Hughes’s sensor tool infringes Schlumberger’s patents.  The parties agree that this dispute, which
they reference as the “four-patent dispute,” was one of the Current Disputes
expressly identified in the Resolution Agreement.  During the course of that proceeding,
Schlumberger submitted a report from its damages expert.  Baker Hughes contends that Schlumberger’s
expert did not confine his analysis to the module and patents at issue in the
four-patent dispute but instead included damages relating to the entire sensor
tool.  Baker Hughes argues that
Schlumberger’s damages model includes damages arising from alleged infringement
of the patents that were licensed to Baker Hughes in the 2004 settlement
agreement.  Baker Hughes also contends that
this damages claim was itself a breach of the 2004 settlement agreement.

Baker Hughes raised affirmative
defenses of license and release in the four-patent dispute, and it invoked the
dispute resolution provisions of the 2004 settlement agreement, contending that
the new dispute about the scope of the releases under that agreement must be
arbitrated before that agreement’s mediator. 
Schlumberger took the position that this dispute about the proper
arbitral forum was encapsulated within an expressly designated Current Dispute,
governed by the Resolution and Procedure Agreements, and thereby should be
determined within the ongoing AAA arbitration. 
In light of the parties’ disagreement about the proper arbitral forum,
the mediator informed the parties that she would not proceed with the dispute
resolution process absent an order from the district court or agreement of the
parties.  Baker Hughes then filed an
application to compel arbitration of the license and release issue before the
mediator and a petition for declaratory judgment.

Meanwhile, the parties presented
their arguments to the AAA panel by letter, and that panel responded with an
“Interim Ruling on Defenses.”  The
Interim Ruling summarized the dispute as encompassing two issues: (1) “who has
jurisdiction to decide particular substantive issues” and (2) “the substantive
issues, namely whether the affirmative defenses of license or release . . .
were raised in a timely manner or were waived.” 
The panel concluded, based on the Resolution Agreement, the Procedure
Agreement, and the AAA rules applicable to the arbitration, that it had
jurisdiction to determine its own jurisdiction and “sole jurisdiction” to
resolve the “substantive” issue of whether Baker Hughes’s affirmative defenses
were waived.  However, acknowledging that
Baker Hughes had filed a motion to compel arbitration in the district court,
and expressly invoking “the interest of judicial economy,” the AAA panel
temporarily stayed its own consideration of the “substantive” waiver issue to
allow the district court time to consider the motion to compel arbitration
under the 2004 settlement agreement.  A
few days later, Schlumberger filed in the district court its own Motion to
Compel Arbitration and to Stay Proceedings, seeking an order staying
proceedings in the district court and “compelling” Baker Hughes “to litigate
its claims and defenses solely in the ongoing [AAA] arbitration.”

After considering the parties’
competing motions, the district court granted Baker Hughes’s application to
compel arbitration.  In the same order,
the court denied Schlumberger’s motion and ordered the parties to arbitrate the
disputes relating to the 2004 settlement agreement before its mediator.  Schlumberger then filed this interlocutory
appeal from the trial court’s order denying its motion.

Analysis

I.                 
Jurisdiction

Baker Hughes has moved to dismiss
this appeal for lack of jurisdiction, so that is the threshold issue for our
consideration.  See CMH Homes v. Perez,
340 S.W.3d 444, 447 (Tex. 2011).  “Unless a statute authorizes an
interlocutory appeal, appellate courts generally only have jurisdiction over
final judgments.”  Id.; see also Jack B. Anglin
Co., Inc. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992).  “We strictly apply statutes granting
interlocutory appeals because they are a narrow exception to the general rule
that interlocutory orders are not immediately appealable.”  CMH
Homes, 340 S.W.3d at 447; see also Bally
Total Fitness Corp. v. Jackson, 53 S.W.3d 352, 355 (Tex. 2001).  Both parties invoke authorities applying the
Federal Arbitration Act and the Texas Arbitration Act, and neither party
suggests that one applies to the exclusion of the other, or that the result
depends upon which law applies.  Accordingly,
we focus our analysis on the application of the TAA’s interlocutory appeal
provisions, which provide that a party may appeal an interlocutory order that
denies an application to compel arbitration made under Section 171.021.  Tex.
Civ. Prac. & Rem. Code Ann. § 171.098(a)(1) (West 2011).

A.              
Schlumberger’s
motion

          Baker Hughes argues that the trial
court’s order does not fit within the narrow statutory categories for which an
interlocutory appeal is permitted.  It
first argues that Schlumberger’s motion in the trial court was not truly an
“application to compel arbitration” in the sense contemplated by the
statute.  See id. §§ 171.021, 171.098(a)(1).  A primary contention supporting this
argument is that the relief requested by Schlumberger merely would result in the
parties continuing their ongoing arbitration proceeding.  Thus Baker Hughes argues that the motion did
not ask the trial court to compel a new arbitration but instead called upon the
trial court to interfere with the arbitrators’ administration of an ongoing
proceeding.  Baker Hughes also argues
that Schlumberger’s motion did not qualify as an application to compel
arbitration because Schlumberger could not satisfy the threshold requirement of
a refusal to arbitrate.  See
id. § 171.021(a)(2).  In response, Schlumberger contends that its
motion was a proper application to compel arbitration and the trial court’s
denial of it is appealable under the plain language of the statute.

          Section 171.098(a)(1) requires, as a predicate to our interlocutory
appellate jurisdiction under that provision, the filing of “an application to
compel arbitration made under Section 171.021” and an order denying that
application.  To prevail under Section
171.021, such a motion must show the existence of an agreement to arbitrate
that applies to the parties’ dispute and that the opposing party has refused to
arbitrate.  See id.  We do not agree with
Baker Hughes, however, that a searching examination of the merits of
Schlumberger’s motion is the appropriate method to determine whether it
qualifies as “an application to compel arbitration” contemplated by
Section 171.098(a)(1).  Instead, it
is the substance and function of the application viewed in the context of the
record that controls our interlocutory jurisdiction.  Cf. Walker
Sand, Inc. v. Baytown Asphalt Materials, Ltd., 95 S.W.3d 511, 515 (Tex.
App.—Houston [1st Dist.] 2002, no pet.) (analyzing substance and function of
order purportedly giving rise to interlocutory appellate jurisdiction under
Section 171.098(a)(1)). 
Accordingly, we will consider Schlumberger’s motion in the context of
the record to determine whether the denial of the application is subject to
interlocutory review.

Schlumberger filed a document in
the trial court entitled “Defendant’s Motion to Compel Arbitration and to Stay
Proceedings.”  In this motion,
Schlumberger alleged the existence of an agreement to arbitrate arising from
the Resolution and Procedure Agreements. 
See Tex. Civ. Prac. & Rem. Code Ann.
§ 171.021(a)(1).  Schlumberger
further alleged that the AAA panel was empowered to determine and already had
determined that the scope of that proceeding included Baker Hughes’s release
and license defense.  Finally,
Schlumberger alleged that rather than arbitrating this issue before the AAA
panel, Baker Hughes filed suit to compel arbitration under the 2004 settlement
agreement.   Thus,
Schlumberger clearly informed the trial court that in the context of an ongoing
arbitration, the parties had a discrete disagreement about the appropriate
venue in which a particular subissue was to be arbitrated and both parties
relied on separate arbitration agreements to support their positions.

1.     Jurisdictional effect of pending
arbitration proceeding

Baker Hughes contends that this
could not be a motion to compel arbitration in the sense contemplated by the
statute because the parties were already in engaged in an ongoing
arbitration.  Although we are obliged to
construe the jurisdictional statute narrowly, see, e.g., CMH Homes, 340
S.W.3d at 447, the text of the statute does not provide any basis for Baker
Hughes’s proposed distinction between a request to initiate a new arbitration
proceeding and a request to require arbitration of a subsidiary issue when its
arbitrability has been disputed.  See Tex.
Civ. Prac. & Rem. Code Ann. § 171.098(a)(1).  The sole authority relied upon by Baker
Hughes for this proposition lends no support. 
In Dealer Computer Services, Inc.
v. Red Hill Ford, Inc., No. 05-10-00983-CV, 2010 WL 3566124, at *1 (Tex.
App.—Dallas Sept. 15, 2010, no pet.) (mem. op.), the trial court had issued a
restraining order staying arbitration proceedings after Red Hill Ford alleged
that the arbitration panel had engaged in misconduct.  See
2010 WL 3566124, at *1.  Two months after
the restraining order expired, the final arbitration hearing had not yet been
rescheduled “due to pending motions and other issues,” and Dealer Computer
moved to compel a return to the pending arbitration.  Id.  The court of appeals held that it lacked
jurisdiction because there was no allegation that Red Hill Ford failed,
neglected, or refused to arbitrate under a written agreement.  Id.  Unlike an attempt to stay proceedings based
on alleged arbitrator misconduct, Schlumberger’s allegation that Baker Hughes
sought to compel a separate arbitration rather than submitting its defenses to
the AAA panel is functionally equivalent to an allegation that Baker Hughes
failed, neglected, or refused to arbitrate the disputed issue.

Baker Hughes also contends that
“interlocutory appeal is not available to challenge orders in cases where
arbitration was originally compelled.” 
But there is nothing in the appellate record to show that the AAA
arbitration was “originally compelled.”  Indeed,
the parties’ briefing in this Court suggests that the AAA arbitration was
instituted by agreement of the parties. 
Moreover, the authority relied upon by Baker Hughes in this regard, HEB Grocery Co., L.P. v. Kirksey, No.
14-10-00217-CV, 2010 WL 1790878 (Tex. App.—Houston [14th Dist.] May 6, 2010, no
pet.) (mem. op.) (per curiam), is not applicable to this dispute because the
jurisdictional defect in that case was that no statutory provision authorized
an interlocutory appeal from an order granting recusal of one arbitrator and
substituting another.  See 2010 WL 1790878, at *2.

2.     Jurisdictional effect of the merits
of Schlumberger’s motion

Baker Hughes also argues that this court
lacks jurisdiction because Schlumberger cannot show that Baker Hughes refused
to arbitrate, which must be shown to compel arbitration under Section
171.021(a).  This argument conflates the characterization
of Schlumberger’s motion as an “application to compel arbitration” with its
ultimate merits.  Put another way, under Baker Hughes’s
interpretation of Section 171.098(a)(1), we would only have appellate
jurisdiction when a trial court incorrectly denied an application to compel
arbitration made under Section 171.021. 
Again acknowledging that we narrowly construe all statutes establishing
our interlocutory appellate jurisdiction, see,
e.g., CMH Homes, 340
S.W.3d at 447, no practical
limitation of our review is achieved if we review the merits of the underlying
motion in order to determine whether we have jurisdiction over the denial of
it.  

Instead, we consider the nature of the motion in the context of the
record.  Cf. Walker Sand, 95 S.W.3d
at 515.  Viewed in that light, it is apparent that while Baker Hughes did not
flatly refuse to arbitrate the dispute in any arbitral forum (it was willing to
arbitrate the dispute before the mediator of the 2004 settlement agreement), by
initiating these proceedings and by withholding its consent to arbitrating in
accordance with what Schlumberger contends in its motion is the controlling
agreement, Baker Hughes resisted arbitration of the particular dispute at issue
before the AAA panel.  Reserving judgment
on the ultimate merits of the motion for purposes of our jurisdictional
inquiry, we conclude that the motion is an application to compel arbitration on
the grounds that Baker Hughes is actively resisting arbitration under the terms
of what Schlumberger alleges is the controlling arbitration agreement.

3.     Jurisdictional effect of the relief
sought by Schlumberger’s motion

Finally, Baker Hughes argues that rather than constituting an
application to compel arbitration, Schlumberger’s motion is merely a response
to Baker Hughes’s motion, particularly because the relief sought by
Schlumberger allegedly was no different from what would have resulted if the
trial court had denied Baker Hughes’s motion. 
This argument fails because Schlumberger, in its motion, sought
affirmative relief beyond the mere denial of Baker Hughes’s motion.  Schlumberger argued that the AAA panel has
the sole power to decide the proper arbitral venue for the merits of Baker
Hughes’s defenses, and it also argued that the AAA panel had actually decided
that question in favor of its own jurisdiction. 
Schlumberger thus sought an order from the trial court ordering Baker
Hughes “to litigate its claims and defenses solely in the ongoing [AAA] arbitration.”  The mere denial of Baker Hughes’s motion
would not necessarily mean that the AAA panel would decide these disputed
issues against Baker Hughes (unless the AAA panel had already decided them in
its Interim Ruling, which the parties dispute and Baker Hughes has denied).  Accordingly, Baker Hughes would remain free
to argue to the AAA panel that a separate arbitration is required on its
defenses.  Schlumberger’s motion asked
for something more than the mere denial of the Baker Hughes motion;
it sought an affirmative
order from the trial court deciding the underlying arbitrability question in
its favor.

*        *        *

Viewing the motion in the context
of the record, we conclude that the substance and function of Schlumberger’s
motion was to allege the existence of an agreement to arbitrate that applied to
the parties’ dispute—i.e. the
Resolution Agreement—and that
Baker Hughes refused to arbitrate in accordance with that agreement.  Cf.
Walker Sand, 95 S.W.3d at 515.  We therefore hold that Schlumberger’s motion
qualified as “an application to compel arbitration made under Section 171.021”
for the purposes of our interlocutory jurisdiction under Section 171.098(a)(1).

B.              
Trial court’s
order

We next consider whether the trial
court’s order qualifies as an “order denying” such an application.  Under the plain language of the TAA, it is
the denial of “an application to compel arbitration”—not the denial of arbitration in the general
sense—that gives rise to the right
to an interlocutory appeal.  Tex. Civ. Prac. & Rem. Code Ann.
§ 171.098(a)(1).  “[I]t is the
substance and function of the order viewed in the context of the record that
controls our interlocutory jurisdiction,” not Baker Hughes’s characterization
of the order.  Walker Sand, 95 S.W.3d at 515; see
also Texas La Fiesta Auto Sales, LLC v. Belk, No. 14-10-01146-CV, 2011 WL
4090381, at *4 (Tex. App.—Houston [14th Dist.] Sept. 15, 2011, no. pet. h.); McReynolds v. Elston, 222 S.W.3d 731,
738 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

The trial court evidently
understood Schlumberger’s motion to be a motion to compel arbitration.  In a single order, the court stated that it
had considered both Baker Hughes’s “Application to Compel Arbitration And Petition
for Declaratory Judgment” and Schlumberger’s “Motion to Compel Arbitration and
Stay Proceedings.”  In its order, the
court expressly granted “Baker Hughes’s application,” denied “Schlumberger’s
motion,” and ordered the parties “to arbitrate the disputes relating to the
2004 Settlement Agreement” before the mediator. 
Thus, at least on its face, the order purports and appears to be one
“denying an application to compel arbitration.” 
See Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1).

The substance and function of the
order support the trial court’s express characterization.  Baker Hughes sought to enforce its alleged contractual
right to arbitration that arose under the 2004 settlement agreement.  Likewise, Schlumberger sought to enforce its
alleged contractual right to arbitration that arose under the Resolution and
Procedure Agreements.  The parties’
dispute about the appropriate arbitral forum indicates that the difference
between the two alternatives is significant, including different methods of
arbitration and different arbitrators. 
The trial court considered two related arbitration agreements, granted a
motion seeking to compel arbitration under one of them, and denied a motion
seeking to compel arbitration under the other. 
As in McReynolds, Schlumberger
did not simply seek to substitute one arbitrator for another; it sought to
enforce an express contractual right.  See McReynolds, 222 S.W.3d at 738.  Baker Hughes attempts to distinguish the
holding that interlocutory jurisdiction existed in McReynolds because, although it involved competing arbitration
agreements, the appellant in that case sought to initiate a new and separate
arbitration proceeding, unlike Schlumberger, which is seeking to continue in an
ongoing arbitration.  We acknowledge that
distinction between the two fact patterns, but it does not alter our analysis.  Although the trial court ordered an
arbitration under the 2004 settlement agreement to proceed, it specifically
denied Schlumberger’s claimed contractual right to arbitration under the
Resolution and Procedure Agreements, which Schlumberger sought to enforce
through its own motion to compel arbitration.

Based on the trial court’s
characterization of Schlumberger’s motion as one to compel arbitration, its
express denial of that motion, and the resulting denial of Schlumberger’s
asserted contractual right to arbitration, we conclude that the trial court’s
order was an order denying an application to compel arbitration.  See McReynolds,
222 S.W.3d at 738–39.  This order is not insulated from appellate
review conferred by statute simply because it also grants a competing motion to
compel arbitration.  Cf. E. Tex. Salt Water
Disposal Co. v. Werline, 307 S.W.3d 267, 270 (Tex. 2010) (holding that
judgment denying confirmation of arbitral award was appealable even though
order also vacated award and directed rehearing).  Accordingly we hold that we have jurisdiction
over this interlocutory appeal, and we deny Baker Hughes’s motion to dismiss.

II.              
Application to compel arbitration

          We
now consider the merits of Schlumberger’s appeal from the denial of its application
to compel arbitration.  Generally
speaking, we review the
trial court’s denial of a motion to compel arbitration for abuse of
discretion.  See Okorafor v. Uncle Sam & Assocs., Inc., 295 S.W.3d 27, 38
(Tex. App.—Houston [1st Dist.] 2009, pet. denied); see also W. Wendall Hall et al., Hall’s Standards of Review in Texas, 42 St. Mary’s L.J. 1, 78
(2010) (citing Jack B. Anglin Co., 842 S.W.2d at 271).  However, “[w]hen an appeal from a denial of a
motion to compel arbitration turns on a legal determination . . . we apply a de
novo standard.”  Forest Oil Corp. v. McAllen, 268 S.W.3d 51, 55 n.9 (Tex. 2008).

Schlumberger argues that the AAA panel had the authority to
determine its own jurisdiction, the panel determined that it had jurisdiction
to decide the merits of Baker Hughes’s defenses based on the 2004 settlement
agreement, and the trial court should have deferred to that ruling.  Baker Hughes responds that there is no reason
to reach these questions because it never refused to arbitrate.  On
the merits, Baker Hughes contends as a matter of contract interpretation that
the 2004 settlement agreement rather than the Resolution Agreement controls the
dispute resolution procedure.  It argues,
therefore, that the Resolution Agreement is inapplicable, and the dispute was
appropriately resolved by the district court because the 2004 agreement does
not reserve arbitrability disputes for the arbitrator.

A.   Refusal to arbitrate

First, we confront the contention that Schlumberger was not
entitled to relief on the theory that Baker Hughes’s willingness to arbitrate
in its preferred arbitral forum means that it has not refused to
arbitrate.  See Tex. Civ. Prac. & Rem. Code Ann. § 171.021(a)(2).  Baker
Hughes reasons that it has agreed to arbitrate, and it is simply following
proper arbitration procedure to assert its rights under the parties’
contracts.  

The sole authority relied upon by
Baker Hughes for this position is Jacobs
v. USA Track & Field, 374 F.3d 85 (2d Cir. 2004), a case decided under
the Federal Arbitration Act, 9 U.S.C. § 4. 
The parties in Jacobs both
agreed to arbitrate their dispute before the AAA, but they disagreed about the
rules to govern the arbitration, including the procedure for selecting
arbitrators.  See Jacobs, 374 F.3d at 86.  Both
of the alternative sets of procedures provided that the arbitrators had the
power to decide which rules applied.  See id. 
The AAA considered submissions from both parties and ruled against
Jacobs, who then filed a motion to compel arbitration under her preferred
rules.  The trial court dismissed the
case for want of jurisdiction, and the Second Circuit affirmed on the basis
that the respondents had not refused to arbitrate, which is a prerequisite to
compelling arbitration under Section 4 of the FAA.  See id.  In so holding, the court specifically noted
that, unlike Baker Hughes in this case, “respondents have not commenced litigation
against petitioner.”  Id. at 89.  The case that the Jacobs court identified as controlling the result, Downing v. Merrill Lynch, Pierce, Fenner
& Smith, Inc., 725 F.2d 192 (2d Cir. 1984), went further and identified
the commencement of litigation as a “default” of an arbitration agreement
giving rise to the right to seek relief under Section 4.  See
Downing, 725 F.2d at 195; see also Jones
v. Gen. Motors Corp., 640 F. Supp. 2d 1124, 1145 (D. Ariz. 2009) (“the very
commencing of litigation can itself be interpreted as a refusal to arbitrate”).

We find the reasoning of Downing
and its progeny to be persuasive and equally applicable to the similar
language in the TAA requiring that a party refuse to arbitrate as a predicate
to an order compelling arbitration.  See Tex. Civ. Prac. & Rem. Code Ann. § 171.021(a)(2).  As applied to this case, the parties
were already involved in an ongoing arbitration pursuant to the Resolution
Agreement.  As discussed in greater
detail below, the parties clearly and unmistakably agreed to submit disputes
about the interpretation of the Resolution Agreement to the arbitration
panel.  In the course of that proceeding,
Baker Hughes asserted that its license or release defenses must be arbitrated
in another forum; Schlumberger disagreed. 
Baker Hughes’s initiation of this court proceeding to compel a separate
arbitration before a separate arbitrator pursuant to different rules
constitutes an effective refusal to arbitrate pursuant to the Resolution
Agreement because Baker Hughes sought to circumvent a resolution of this
arbitrability dispute by the AAA panel despite agreeing in the Resolution
Agreement to submit such disputes to the AAA panel.  We therefore conclude, as a matter of law as
applied to the undisputed procedural facts, that Baker Hughes refused to
arbitrate under the Resolution Agreement and Schlumberger properly invoked
Section 171.021 to compel arbitration under that agreement.

B.   Arbitrability of dispute over proper arbitral forum

Turning to the merits of the motion denied by the trial
court, we begin by considering Schlumberger’s contention that the AAA panel had
authority under the Resolution Agreement to determine its own
jurisdiction.  This is an essential
element of Schlumberger’s motion to compel because otherwise there is no
enforceable “agreement to arbitrate.”  Id. § 171.021(a)(1).  This determination depends on an
interpretation of the parties’ contracts, which we review de novo.  See In re Dillard Dep’t Stores, Inc., 186 S.W.3d 514, 515 (Tex. 2006); J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 227 (Tex. 2003).  Unless the parties clearly and unmistakably
agree to submit threshold questions of arbitrability to arbitration, these
issues are to be resolved by courts.  See First Options of Chicago, Inc. v. Kaplan,
514 U.S. 938, 943, 115 S. Ct. 1920, 1923 (1995); In re Weekley Homes, L.P., 180 S.W.3d 127, 130 (Tex. 2005); Burlington Res. Oil & Gas Co. v. San
Juan Basin Royalty Trust, 249 S.W.3d 34, 39–40 (Tex. App.—Houston [1st
Dist.] 2007 pet. denied).  However, the
express incorporation of rules that empower the arbitrator to determine
arbitrability—such as the AAA Commercial Arbitration Rules—has been held to be
clear and unmistakable evidence of the parties’ intent to allow the arbitrator
to decide such issues.  See, e.g., Burlington Res. Oil & Gas Co., 249 S.W.3d at 40–41; Haddock v. Quinn, 287 S.W.3d 158, 172
(Tex. App.—Fort Worth 2009, pet. denied).

The pending four-patent dispute is governed by the Resolution Agreement, which provides that
“any Current Disputes or future Disputes . . . shall be solely resolved as set
forth in the Procedure Agreement.”  The
parties agree that the underlying four-patent dispute is a Current Dispute under
the Resolution Agreement.  Other “Disputes”
to be “solely resolved as set forth in the Resolution Agreement” include
“disputes relating to the interpretation, construction, alleged breach of this
[Resolution] Agreement, [and] the Procedure Agreement,” but as noted above and
argued by Baker Hughes, “[d]isputes arising under existing licenses . . . shall
be treated in accordance with Section 3.2,” which excepts any existing or
future patent agreement or license with its own dispute resolution process.

It is therefore apparent that
Schlumberger and Baker Hughes have identified two separate “Disputes.”  One dispute is a disagreement of contract
interpretation about whether the merits of Baker Hughes’s license or release
defense should be decided under the Resolution and Procedure Agreements by the
AAA panel or under the 2004 settlement agreement’s dispute resolution procedure
by the mediator who facilitated that agreement. 
A separate dispute concerns the choice of forum to decide the answer to
the contract interpretation dispute.

This latter dispute about the
appropriate forum arose in the context of an ongoing arbitration governed by
the Resolution Agreement.  As reflected
by the parties’ arguments as described above, the answer depends on an
interpretation of the Resolution Agreement. 
Although Baker Hughes has a colorable argument that the merits of the
contract interpretation dispute require a separate proceeding under the 2004
settlement agreement, that argument itself depends on an interpretation of the
Resolution Agreement.  And the parties agreed
that “disputes relating to the interpretation” and “construction” of the
Resolution Agreement are themselves “Disputes,” which are to be “solely
resolved as set forth in the Procedure Agreement.”

The Procedure Agreement requires
arbitration to be conducted “pursuant to administration by the AAA” under the
AAA Commercial Arbitration Rules.  Under Rule 7(a) of the Commercial Arbitration
Rules, the “arbitrator shall have the power to rule on his or her own
jurisdiction, including any objections with respect to the existence, scope or
validity of the arbitration agreement.”  Commercial Arbitration Rules of the American
Arbitration Association, Rule 7(a) (2009).  The parties thus incorporated the AAA
Commercial Arbitration Rules into the Resolution and Procedure Agreements.  Under Rule 7(a) of the Commercial Arbitration
Rules, the AAA panel had authority to interpret the Resolution Agreement and
thereby determine the scope of the four-patent arbitration.  The AAA panel’s authority extends to
determining whether Baker Hughes’s license and release defense relates to a
claim of infringement or the damages arising therefrom such that it is to be
resolved by the AAA panel as part of the pending four-patent arbitration, as
contemplated by the Resolution Agreement’s definition of “dispute.” Or, the
panel could determine the license and release defense implicates a breach of an
existing agreement, as contemplated by the carve-out provision in section 3 of
the Resolution Agreement, thus triggering the dispute resolution provision of
the 2004 settlement agreement.  There are
no provisions in the Resolution or Procedure Agreements that negate the
arbitrators’ power under AAA Rule 7(a) to determine the arbitrability of a
defense raised in arbitration.  Thus, we
conclude that this issue of contract interpretation was a question for the AAA
panel, not the trial court and not this court. 
See Green Tree Fin. Corp. v.
Bazzle, 539 U.S 444, 452–53, 123 S. Ct. 2402, 2407 (2003) (holding that
interpretation of arbitration contract was question for arbitrators).  

In its motion to compel
arbitration, Schlumberger asserted that the merits of Baker Hughes’s defense
was within the scope of the AAA arbitration and that the parties had agreed to
let the AAA panel determine issues of arbitrability.  Because the AAA panel had authority to
determine the question of contract interpretation, the trial court should have
granted this aspect of Schlumberger’s motion so that the dispute could be
resolved by the AAA panel, as the parties agreed in the Resolution
Agreement.  See id. at 452–53, 123 S. Ct. at 2407.  

C.   Determination by AAA panel

Finally, we address the ultimate
relief requested by Schlumberger, an order that these proceedings be stayed and
that Baker Hughes be required to litigate the merits of its license and release
defense before the AAA panel.  To the
extent Schlumberger argues it is entitled to this relief on the merits of its
arguments about the interpretation of the various arbitration agreements,
Schlumberger’s arguments are appropriately addressed to the AAA panel, as
explained above.  To the extent
Schlumberger contends that the AAA panel has already resolved the question in
favor of its own jurisdiction, we conclude that the appellate record provided
to us is inconclusive as to whether that was the intended effect of the AAA
panel’s Interim Ruling.  If
Schlumberger’s contention in this regard is a correct representation of the AAA
panel’s intended ruling, then it can be implemented by the panel.  If, on the other hand, the AAA has reserved
and not yet resolved the question, the parties should direct their arguments to
that panel.  In deference to the parties’
agreement to submit the question to the arbitrators, we express no opinion on
the proper legal conclusion.

Conclusion

We deny
Baker Hughes’s motion to dismiss this appeal. 
We reverse the trial court’s interlocutory order denying Schlumberger’s
motion in its entirety, and we remand the case to the trial court with an
instruction to grant Schlumberger’s motion to compel in part by ordering the
parties to arbitrate before the AAA panel the contract interpretation question
of whether the AAA panel has jurisdiction over the merits of Baker Hughes’s
license and release defense.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel consists of Justices Jennings, Keyes, and
Massengale.