**Reversed and Rendered in Part, Reversed and Remanded in Part, and Opinion filed December 31, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00787-CV

---

## SARITA GARG, SMITH & GARG, LLC AND GARG & ASSOCIATES, PC, Appellants

### V.

## TUAN M. PHAM, Appellee

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2008-43381**

---

## O P I N I O N

Appellants Sarita Garg, Smith & Garg, LLC, and Garg & Associates, PC (the Garg Parties) challenge the trial court's interlocutory order denying their motion to compel arbitration. After the Garg Parties filed their notice of appeal, we ordered the parties to address whether we have jurisdiction over this appeal of the trial court's interlocutory order. In four issues, the Garg Parties contend that (1) we

have jurisdiction over the appeal; (2) all of appellee Tuan Minh Pham's claims are covered by the arbitration clause and it is enforceable against Pham; (3) the Garg Parties did not waive their right to arbitration; and (4) the arbitration clause is not unconscionable.[1] We reverse the trial court's order, render judgment ordering arbitration of Pham's claims against the Garg Parties, and remand for proceedings consistent with this opinion.[2]

## *Background*

Pham was an attorney at the law firm Smith & Garg, LLC where Sarita Garg and Brian Smith are (or were) partners. Sarita Garg is also a shareholder of Garg & Associates, PC.[3] Pham alleges in January 2008, Sarita Garg and Brian Smith, as partners of Smith & Garg, LLC and Smith & Garg, PC, entered into a compensation agreement with Pham. In accordance with that agreement, Pham was to become a partner and receive as compensation a portion of fees acquired from hours billed by associate attorneys and a percentage of the revenues of Smith & Garg, LLC and Smith & Garg, PC.[4] Pham alleges he was not compensated as agreed by the parties.

In March 2008, Pham and Smith & Garg, LLC entered into a Partnership Agreement. The Partnership Agreement required Pham to invest a total of

---

[1] The Garg Parties initially filed an appellate brief addressing only jurisdiction and waiver. They then supplemented their brief, with our leave, to assert that the arbitration clause is not unconscionable and covers Pham's claims.

[2] Not all the parties to this case are parties to the appeal. Kevin Cloves also has claims pending against the Garg Parties, but the motion to compel arbitration was not directed toward his claims.

[3] It is unclear from the record who the members of Garg & Associates, PC are. Pham alleges that Garg & Associates, PC "wrongfully exercised dominion or control over physical and intellectual property of [Smith & Garg, LLC] and [Garg & Associates, PC] to the exclusion of and inconsistent with Pham's rights."

[4] Pham also alleges he was given a percentage interest in a d/b/a of Smith & Garg, LLC named Blue Sand Design.

2

$250,000 in Smith & Garg, LLC over time, including an up-front payment of $100,000. In return, Pham became a partner with a one-third interest in any future firm offices or businesses opened by Smith & Garg, LLC.[5] Under the Partnership Agreement, Pham alleges he was also to be included in decision-making and consulted about financial obligations and liabilities, and to share in certain profits of Smith & Garg, LLC and any other entities opened by Smith & Garg, LLC. The Partnership Agreement included the following arbitration clause:

> In the event that any party to this Partnership Agreement contest[s] any provision herein or has a dispute with regard to this Agreement or any issues related to the Partnership, business, or any other logically related entity or business associated with Smith and Garg, [LLC,] Brian Smith, Sarita Garg, or Stephen Pham, the parties agree to mediation followed by binding arbitration in accordance with AAA standards.[6]

Pham alleges his investment was to be used only "to operate and expand" the law firm's office in Long Beach and any other office Smith & Garg, LLC subsequently opened. Pham asserts he was never provided an accounting of his investment, access to company records, or decision-making authority. He purportedly was locked out of Smith & Garg, LLC and Smith & Garg, PC, and he contends that the parties' business relationship was "illegally terminat[ed]."

The Garg Parties and Pham were named as defendants in this lawsuit, which was brought by a former client in 2008. Pham subsequently filed his own suit against Garg in December 2010 (the 2010 lawsuit). The former client nonsuited her claims, and the trial court consolidated the two cases in 2012. Pham brought claims against the Garg Parties for common law and statutory fraud, negligent misrepresentation, breach of fiduciary duty, breach of contract, misappropriation

---

[5] Apparently, the plan was for Pham to open an office in Long Beach, California.

[6] AAA is an acronym for the American Arbitration Association.

3

and unfair competition, conversion, promissory estoppel, quantum meruit, and civil conspiracy.

In May 2014, after trial had been continued several times by request of the parties, the trial court set a trial date for February 2015. The Garg Parties filed a "Motion to Compel Mediation and Arbitration and Stay All Claims of Tuan Minh Pham" in June 2014. Pham filed a response the morning of the hearing on the motion. The Garg Parties failed to appear, and the trial court denied the motion.

The Garg Parties subsequently filed a "Motion for Reconsideration of Motion to Compel Mediation and Arbitration and Stay All Claims of Tuan M. Pham." They argued that the motion should be reconsidered based on the merits, not because of their failure to appear. They also argued that even if their counsel had appeared at the hearing, they would not have had time to review and reply to the response Pham filed the morning of the hearing.

The trial court granted the motion for reconsideration and agreed to reconsider the motion to compel arbitration by submission. The court again denied the motion. The Garg Parties filed their notice of interlocutory appeal on September 30, 2014.

### Discussion

In four issues, the Garg Parties argue that we have jurisdiction over the appeal and complain that the trial court denied their motion to compel arbitration. The Garg Parties assert that they established the existence of a valid arbitration agreement, Pham's claims fall within the scope of that agreement, they did not waive their right to arbitration, and the arbitration agreement is not unconscionable.

4

## I. Jurisdiction

In their first issue, the Garg Parties assert that we have jurisdiction over this appeal because they filed a timely notice of appeal. The trial court denied the Garg Parties' motion to compel arbitration on August 1, 2014, but subsequently granted their motion to reconsider. The trial court again denied the motion to compel arbitration on August 25. We ordered the parties to address whether the Garg Parties were required to appeal the trial court's first order denying the motion to compel arbitration within the time allowed to perfect an interlocutory appeal or whether they could appeal the trial court's second order denying the motion to compel.

An appeal from an interlocutory order denying a motion to compel arbitration is accelerated. Tex. R. App. P. 28.1(a). A notice of accelerated appeal must be filed within 20 days after the judgment or order is signed unless an extension is granted. Tex. R. App. P. 26.1(b), 26.3. The time for filing a notice of appeal is jurisdictional, and absent a timely filed notice of appeal or an extension request, we must dismiss the appeal. *Hydro Mgmt. Sys., LLC v. Jalin, Ltd.*, No. 04-09-00813-CV, 2010 WL 1817813, at *1 (Tex. App.—San Antonio May 5, 2010, no pet.) (mem. op.) (citing *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997)).

The Garg Parties' counsel failed to appear at the first hearing on the motion to compel arbitration, which was denied. The Garg Parties then filed their motion to reconsider the denial, asserting that counsel's failure to appear was inadvertent and that Pham did not file a timely response. The trial court granted the motion for reconsideration and ordered that the motion to compel arbitration would be "re-heard by submission" on August 25, 2014. The trial court again denied the motion to compel arbitration on that date.

The Garg Parties assert that we have jurisdiction over their appeal because

they filed a timely notice of appeal of the trial court's second order denying their motion to compel arbitration.[7] Pham argues that we lack jurisdiction over this appeal because the deadline for the Garg Parties to file their notice of appeal ran from the trial court's initial order signed on August 1 denying the Garg Parties' motion to compel arbitration. Pham cites several cases in which the trial court denied a motion to reconsider its denial of a motion to compel arbitration. *See Nazareth Hall Nursing Ctr. v. Castro*, 374 S.W.3d 590, 594 (Tex. App.—El Paso 2012, no pet.); *Hydro Mgmt. Sys.*, 2010 WL 1817813, at *1-2; *Nabors Well Servs. Co. v. Aviles*, No. 06–10–00018–CV, 2010 WL 2680087, at *1-2 (Tex. App.—Texarkana July 7, 2010, no pet.) (mem. op.). Two of these cases stand for the proposition that filing a motion to reconsider does not extend the time for perfecting an appeal of a trial court's interlocutory order denying a motion to compel arbitration. *Hydro Mgmt. Sys.*, 2010 WL 1817813, at *1 ("Hydro's motion for reconsideration did not extend the time for perfecting an appeal of the trial court's interlocutory order [denying motion to compel arbitration]."); *Nabors Well Servs. Co.*, 2010 WL 2680087, at *2 (holding that an amended motion to compel arbitration was equivalent to a motion to reconsider the trial court's earlier order denying a motion to compel arbitration and thus did "not extend the appellate timetable"). The third case stands for the proposition that an interlocutory order denying a motion to reconsider the trial court's earlier order denying a motion to compel arbitration is not appealable. *Nazareth Hall Nursing Ctr.*, 374 S.W.3d at 594.

---

[7] The parties do not dispute that the Garg Parties' notice of appeal would have been timely if the time to perfect the appeal ran from the date the trial court denied the motion to compel arbitration for the second time. The twentieth day after the trial court signed the second order was September 15, 2014, but we granted a 15-day extension of time to file the notice, making it due September 30. The Garg Parties filed their notice of interlocutory appeal on that day.

We agree that the trial court's denial of a motion for reconsideration would not extend the appellate timetable and that the trial court's order on a motion for reconsideration is not appealable. However, the Garg Parties are not appealing the trial court's order on the motion for reconsideration. They are appealing the trial court's second order denying the motion to compel arbitration, which the trial court signed after granting the Garg Parties' motion for reconsideration. Pham has cited no case law—and we have found none—that would prevent the Garg Parties from appealing the second denial of their motion to compel arbitration. Likewise, we have found no case law addressing whether the grant of a motion for reconsideration extends the appellate timetable on a motion to compel arbitration.

We find the supreme court's analysis regarding motions to reconsider orders granting motions for new trial to be instructive. A trial court has the authority and responsibility to review any pretrial order upon proper motion. *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 231 (Tex. 2008). When a trial court grants a motion for new trial, the case stands on the court's docket as if no trial had occurred. *Id*. at 230-31. If, however, the trial court reconsiders and withdraws its order granting a new trial, the prior judgment is reinstated, and the appellate deadlines run from the later order granting reinstatement rather than the earlier order granting the new trial. *Id*. at 231. In other words, a trial court sets aside the judgment with a new trial order. *See id*. If the trial court later reconsiders its order on the motion for new trial and reinstates the judgment, the appellate deadlines run from the order reinstating judgment rather than the date of the original judgment so that the parties are able to perfect an appeal. *See id*.

Here, the trial court denied the Garg Parties' motion to compel but subsequently granted the Garg Parties' motion for reconsideration of the earlier order. The trial court explicitly agreed to "re-hear" the motion to compel, which is

7

similar to granting a motion for new trial. As discussed, the effect of granting a new trial is to set aside the original judgment. *See id*. We conclude that in agreeing to rehear the motion to reconsider, the trial court similarly set aside the original order denying the motion to compel. The trial court again denied the motion to compel, which is similar to reconsidering a motion for new trial, denying it, and reinstating the original judgment. Accordingly, the appellate timetable began to run from the date the trial court again denied the motion to compel arbitration rather than the date of the original order. *See id*.; *see also Enright v. Goodman Distribution, Inc.*, 330 S.W.3d 392, 395 n.2 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (acknowledging that an order granting reconsideration of an order granting motion for new trial caused "appellate timetable [to begin] anew"). We thus conclude that the Garg Parties' notice of appeal was filed timely and we have jurisdiction over this appeal.

We sustain the Garg Parties' first issue.

## II. Challenges to Trial Court's Denial of Motion to Compel Arbitration

We now turn to the merits of the appeal to determine whether the trial court erred in denying the Garg Parties' motion to compel arbitration. The arbitration clause does not specifically invoke either the Federal Arbitration Act (FAA) or the Texas Arbitration Act (TAA). Pham asserts on appeal that the FAA controls, and the Garg Parties have not challenged this assertion.[8] However, the facts of this case

---

[8] Pham asserts that interlocutory appeals subject to the FAA are authorized by section 51.016 of the Texas Civil Practice and Remedies Code, thus indicating that the FAA applies here. Because the Garg Parties do not challenge this assertion, we will review the issues under the FAA. *See Mega Builders, Inc. v. Paramount Stores, Inc.*, No. 14–14–00744–CV, 2015 WL 3429060, at *2 n.1 (Tex. App.—Houston [14th Dist.] May 28, 2015, no pet.) (mem. op.) ("Mega Builders alleges that the [Texas General Arbitration Act (TGAA)] governs, and Paramount does not challenge this assertion; therefore, we will review Mega Builders's issues under the TGAA.").

and the issues on appeal are subject to the same analysis under either statute. *See Saxa Inc. v. DFD Architecture Inc.*, 213 S.W.3d 224, 229 n.4 (Tex. App.—Dallas 2010, pet. denied) ("The issue of arbitrability is subject to a virtually identical analysis under either the FAA or the TAA." (citing *ODL Servs., Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399, 418 (Tex. App.—Houston [1st Dist.] 2008, no pet.))); *950 Corbindale, L.P. v. Kotts Capital Holdings Ltd. P'ship*, 316 S.W.3d 191, 195 n.2 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Whether a case is governed by the FAA or the TAA, many of the underlying substantive principles are the same." (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001))).

A party moving to compel arbitration must establish the existence of a valid arbitration agreement and that the claims asserted fall within the scope of that agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If a relevant party did not sign the document in which the arbitration agreement is found, addressing the first prong includes analyzing whether the nonsignatory is bound by or can enforce the arbitration agreement. *See In re Rubiola*, 334 S.W.3d 220, 223–24 (Tex. 2011). If the movant establishes that the claims asserted fall within the scope of a valid arbitration agreement, the burden then shifts to the party opposing arbitration to establish a defense to the arbitration agreement. *McReynolds v. Elston*, 222 S.W.3d 731, 739 (Tex. App.—Houston [14th Dist.] 2007, no pet.). If the trial court concludes the movant has met its burden and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration. *Id*.

In reviewing a denial of a motion to compel arbitration, we review factual findings under a legal sufficiency or "no evidence" standard and legal conclusions de novo. *Id*. When only the legal interpretation of the arbitration clause is at issue,

we review the trial court's ruling de novo. *Id*. The parties do not dispute the existence of the arbitration clause; instead, they disagree over the scope and enforceability of the clause. Pham raises two defenses to arbitration—waiver and unconscionability.

## A. Scope and Enforceability of Arbitration Clause

In its fourth issue, the Garg Parties contend that all of Pham's claims fall under the purview of the arbitration clause.[9] Pham contends that many of his claims fall outside the scope of the arbitration clause and that Garg and Associates, PC cannot enforce the arbitration clause because the professional corporation is not a signatory to the Partnership Agreement.[10]

**Claims within Scope of Arbitration Clause**. A determination of the scope of an unambiguous arbitration clause is a matter of contract interpretation and a question of law for the trial court subject to de novo review. *In re Guggenheim Corp. Funding, LLC*, 380 S.W.3d 879, 886 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We interpret arbitration clauses under traditional contract principles. *J.M. Davidson, Inc.*, 128 S.W.3d at 229. We interpret unambiguous contracts as a matter of law. *Id*. Our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Id*. But any doubts regarding the scope of the arbitration agreement are resolved in favor of arbitration. *See FirstMerit Bank*, 52 S.W.3d at 753 (stating that a presumption exists favoring agreements to arbitrate under the FAA and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration); *Emerald Tex., Inc. v. Peel*, 920 S.W.2d 398, 402 (Tex. App.—Houston [1st Dist.] 1996, no

---

[9] We discuss the issues out of order for organizational purposes.

[10] A fair reading of Pham's brief encompasses a challenge to the enforceability of the arbitration agreement by the PC as a nonsignatory, discussed below.

pet.) ("Texas law favors arbitration; thus, doubts regarding the scope of an arbitration agreement are resolved in favor of arbitration."). A court should not deny arbitration unless the court can say with positive assurance that an arbitration clause is not susceptible of an interpretation that would cover the claims at issue. *See Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995).

To determine whether a claim falls within the scope of an arbitration clause, we must "focus on the factual allegations of the complaint, rather than the legal causes of action asserted." *In re Rubiola*, 334 S.W.3d at 225; *FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d 688, 695 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). We apply a common-sense examination of the underlying claims to determine if they come within the scope of the arbitration clause. *Guggenheim Corp. Funding*, 380 S.W.3d at 887 (citing *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 884 (Tex. 2010) (orig. proceeding) (per curiam)). A party may not attempt to avoid an arbitration clause through artful pleading. *Id*.

Pham asserts that his causes of action for common law fraud, breach of fiduciary duty, gross negligence, misrepresentation, promissory estoppel, quantum meruit, conversion, misappropriation, unfair competition, and civil conspiracy do not relate entirely to the Partnership Agreement but instead relate in part to an earlier oral compensation agreement and thus fall outside the scope of the arbitration clause. Pham alleges in his live petition that the parties attended a meeting in January 2008 during which an oral "compensation plan contract . . . was implemented and the job title of 'Partner' was given to" Pham. Under this alleged oral compensation agreement, Pham was not given a membership interest in Smith & Garg, LLC or a shareholder interest in Smith & Garg, PC, but was to be compensated with a percentage of the fees billed by associate attorneys and a percentage of gross revenues. Pham also alleges that he and Smith & Garg, LLC

entered into the Partnership Agreement in March 2008. The Partnership Agreement also addresses the investment Pham made into Smith & Garg, LLC, the compensation to be paid to Pham as a partner in Smith & Garg, LLC, and Pham's responsibilities and other rights as a partner.

The arbitration clause in the Partnership Agreement expressly encompasses any "dispute with regard to [the Partnership] Agreement or any issues related to the Partnership, business, or any logically related entity or business associated with Smith and Garg, [LLC,] Brian Smith, Sarita Garg, or Stephen Pham." The phrase "related to" is very broad. *Schwarz v. Pully*, No. 05-14-00615-CV, 2015 WL 4607423, at *3 (Tex. App.—Dallas Aug. 3, 2015, no pet.) (mem. op.) (concluding that claims arising out of a separate oral employment agreement related to written partnership agreement with broad arbitration clause). Issues "relate to" a partnership if they have a significant relationship with the partnership or touch partnership matters. *See id*. (citing *Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 898 (Tex. App.—Austin 2006, no pet.)). Because the arbitration clause is so broad, if the facts alleged "touch matters," have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with partnership business or any other logically related entity or business associated with Smith and Garg, LLC, Brian Smith, Sarita Garg, or Stephen Pham, the claim is arbitrable. *See Cotton Commercial USA, Inc. v. Clear Creek ISD*, 387 S.W.3d 99, 108 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Didmon*, 438 S.W.3d at 695. But if the facts alleged in support of the claim stand alone and are completely independent of these matters, and the claim could be maintained without reference to them, the claim is not subject to arbitration. *Cotton Commercial USA*, 387 S.W.3d at 108; *Didmon*, 438 S.W.3d at 695-96.

Pham alleges that he was not compensated in accordance with the Partnership Agreement and the Garg Parties failed to provide him an accounting of his investment or access to company records, failed to provide him with decision-making authority in Smith & Garg, LLC and Smith & Garg, PC, and improperly terminated their business relationship with him. The Garg Parties' duty to compensate Pham and provide Pham with accountings, access to company records, and decision-making authority are all addressed in the Partnership Agreement.[11] In addition, the oral compensation agreement that Pham alleges the parties agreed to before signing the Partnership Agreement relates to the partnership because, as alleged by Pham, he became a partner pursuant to that contract.

We shall determine whether Pham's causes of action for common law fraud, breach of fiduciary duty, gross negligence, misrepresentation, promissory estoppel, quantum meruit, conversion, misappropriation, unfair competition, and civil conspiracy involving the oral compensation agreement are "issues related to the Partnership, business, or any logically related entity or business associated with Smith and Garg, [LLC,] Brian Smith, Sarita Garg, or Stephen Pham" by examining the following allegations, in relevant part, with regard to each claim:

- **Common law fraud**. The Garg Parties fraudulently induced Pham to enter into the oral compensation agreement.

- **Breach of fiduciary duty**. The Garg Parties owed Pham fiduciary duties as "business partners with Pham" and breached those duties by using funds taken from Smith & Garg, PC to pay for expenses incurred by Smith & Garg, LLC, using firm resources to pay for vehicles, livestock, and personal expenses, and failing to account to Pham.

---

[11] The Partnership Agreement includes the following provision: "Pham shall jointly, along with Brian Smith and Sarita Garg, share in all decision making, financial obligations, liabilities, and windfalls to the extent it effects [sic] the entities stated in this Agreement, to which Pham has an interest."

13

- **Negligent misrepresentation**. The Garg Parties made misrepresentations to induce Pham to enter into "transactions described hereinabove." We presume the referenced transactions relate to the Partnership Agreement and the oral compensation agreement because purported breaches of these agreements and related torts form the basis for Pham's claims.[12]

- **Promissory Estoppel and Quantum Meruit**. The Garg Parties made promises to Pham "in the course of their relationship and within the partnership agreements" and Pham provided services to the Garg Parties in exchange for interests in Smith & Garg, LLC and Smith & Garg, PC.

- **Conversion**. The Garg Parties wrongfully exercised dominion and control over physical and intellectual property of Smith & Garg, LLC and Smith & Garg, PC to the exclusion of and inconsistent with Pham's rights as a partner.

- **Misappropriation and Unfair Competition**. The Garg Parties used the professional likeness of Pham connected with legal articles and blogs on the Garg Parties' websites to increase their internet presence to Pham's detriment, thus unfairly competing with Pham's new law firm.

- **Civil Conspiracy**. The Garg Parties defrauded Pham of his benefits under the oral employment agreement.

Pham alleges he became a partner of Garg & Smith, LLC and Garg & Smith, PC under the oral compensation agreement. All of the above allegations deal with a dispute over partnership resources, responsibilities, and liability. Garg & Smith, PC is an "entity or business" that is "logically related to" Garg & Smith, LLC. Accordingly, we conclude Pham's claims all relate "to the Partnership, business, or any logically related entity or business associated with Smith and Garg, [LLC,] Brian Smith, Sarita Garg, or Stephen Pham" and are arbitrable under the plain

---

[12] On appeal, Pham contends he has claims for gross negligence and misrepresentation. His live petition has a claim for negligent misrepresentation but no separate claim for gross negligence.

language of the arbitration clause. *See Schwartz*, 2015 WL 4607423, at \*4; *see also McGehee v. Bowman*, 339 S.W.3d 820, 825 (Tex. App.—Dallas 2011, no pet.).

**Arbitration Clause Enforceable by Nonsignatory**. Pham further contends that one of the appellants, Garg & Associates, PC, cannot compel arbitration because it is not a signatory to the Partnership Agreement.[13] As a general rule, an arbitration clause cannot be invoked by a nonparty to the arbitration contract. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015); *Parker v. Schlumberger Tech. Corp.*, No. 01-14-01018-CV, 2015 WL 5460401, at \*6 (Tex. App.—Houston [1st Dist.] Sept. 17, 2015, no. pet. h.). The policy favoring arbitration is strong, but it alone does not authorize a nonparty to invoke arbitration. *G.T. Leach Builders*, 458 S.W.3d at 524; *Parker*, 2015 WL 5460401, at \*6. In some circumstances, however, a nonsignatory may be permitted to enforce an arbitration agreement. *Parker*, 2015 WL 5460401, at \*6 (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (listing six recognized theories that may bind nonsignatories: "(1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary") and *G.T. Leach Builders*, 458 S.W.3d at 524). Ultimately, we must determine the intent of the parties as expressed in the terms of the agreement by applying ordinary principles of state contract law to determine whether nonsignatory Garg & Associates, PC may compel arbitration. *See G.T. Leach Builders*, 458 S.W.3d at 524.

Pham, the plaintiff below, is a signatory to the Partnership Agreement. A claimant cannot seek to hold a nonsignatory liable for duties imposed by an agreement that contains an arbitration clause, but then deny arbitration's

---

[13] The partners of Garg & Smith, PC, signed the Partnership Agreement, but the PC itself did not.

applicability because the defendant is a nonsignatory. *Parker*, 2015 WL 5460401, at *6 (citing *Meyer v. WMCO–GP, LLC*, 211 S.W.3d 302, 306 (Tex. 2006)). In that connection, under principles of equitable estoppel, a claimant who sues based on a contract subjects himself or herself to the contract's terms, including the arbitration clause. *G.T. Leach Builders*, 458 S.W.3d at 527. For a nonsignatory to be able to enforce an arbitration clause based on equitable estoppel, the claim must not only relate to the agreement containing the arbitration clause, but the claimant must also seek to derive a direct benefit—that is, a benefit that stems directly from that agreement. *Id*.; *see also Parker*, 2015 WL 5460401, at *6; *Cooper Indus., LLC v. Pepsi-Cola Metro. Bottling Co.*, No. 14-14-00562-CV, 2015 WL 5025812, at *4 (Tex. App.—Houston [14th Dist.] Aug. 25, 2015, no. pet.). The claim must depend on the existence of the contract and be unable to stand independently without the contract. *G.T. Leach Builders*, 458 S.W.3d at 527-28. The alleged liability must arise solely from the contract or must be determined by reference to it. *Id*. at 528. Alternatively, if the nonsignatory defendant is an affiliate of a signatory, then the signatory plaintiff can be compelled to arbitrate its claims against the affiliate. *Cooper Indus.*, 2015 WL 5025812, at *4.

In examining whether Garg & Associates, PC may invoke the Partnership Agreement's arbitration clause, we again note that Pham's claims all relate "to the Partnership, business, or any logically related entity or business associated with Smith and Garg, [LLC,] Brian Smith, Sarita Garg, or Stephen Pham" and are arbitrable under the plain language of the arbitration clause. Moreover, Pham seeks damages for breaches of the Partnership Agreement and related torts from all of the appellants. Although Pham contends that his claims depend in part on an earlier oral compensation agreement, he seeks compensation under both that agreement

16

and the Partnership Agreement.[14] The parties entered into the Partnership Agreement after the alleged oral employment agreement, and the Partnership Agreement also addresses Pham's entitlement to compensation and other rights and responsibilities as a partner. Thus, Garg & Associates, PC's liability cannot be determined without reference to the Partnership Agreement. *See Parker*, 2015 WL 5460401, at *7; *see also Cooper Indus.*, 2015 WL 5025812, at *5 (citing *Smith v. Kenda Capital, LLC*, 451 S.W.3d 453, 460 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("[D]irect benefits estoppel analysis focuses on whether a contract containing the clause at issue also includes other terms on which the signatory plaintiff must rely to prosecute its claims.")).

Because (1) Pham was a signatory to the Partnership Agreement; (2) Pham agreed to arbitrate "any issues related to the Partnership, business, or any logically related entity or business associated with Smith and Garg, [LLC,] Brian Smith, Sarita Garg, or Stephen Pham," which includes Garg & Associates, PC; and (3) Garg & Associates, PC's liability cannot be determined without reference to the Partnership Agreement, we hold the doctrine of equitable estoppel applies. *See Parker*, 2015 WL 5460401, at *7 (citing *Meyer*, 211 S.W.3d at 306–07 (applying doctrine of equitable estoppel to motion to compel arbitration by parties who were not signatories to arbitration agreement), *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 394-95 (5th Cir. 2002) (holding arbitration clause in one agreement that is "essential" to an "overall transaction" presumptively applies to "other contemporaneously executed agreements that are part of the same

---

[14] These facts differ from those that the supreme court addressed in *G.T. Leach Builders*, 458 S.W.3d at 509–10. In that case, the court concluded that subcontractors who were not signatories to a general contractor's construction contract could not compel arbitration because the claims against them did not require enforcement of the general contract and could stand alone under the subcontract. *Id*. at 527–29. The court noted that the plaintiff's claims in that case derived solely from "separate alleged agreement[s]." *Id*. at 529.

transaction"), and *Kirby*, 183 S.W.3d at 900-01 (same)). Accordingly, Garg & Associates, PC, is entitled to compel arbitration if Pham has not established any defenses to arbitration.

We sustain the Garg Parties' fourth issue.

### B. No Waiver of Arbitration Rights

In their second issue, the Garg Parties contend that they did not waive their right to arbitration. Pham argues to the contrary that the Garg Parties substantially invoked the judicial process and thus impliedly waived their right to arbitration. Arbitration is strongly favored under both federal and state law. *Prudential Sec.*, 909 S.W.2d at 898. A party waives a right to arbitration by substantially invoking the judicial process to the other party's detriment or prejudice. *Baty v. Bowen, Miclette & Britt, Inc.*, 423 S.W.3d 427, 433 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). A party substantially invokes the judicial process through conduct inconsistent with a claimed right to compel arbitration. *G.T. Leach Builders*, 458 S.W.3d at 511-12 (citing *Perry Homes v. Cull*, 258 S.W.3d 580, 593–94 (Tex. 2008)). The party asserting waiver has the burden to prove substantial invocation of the judicial process and prejudice. *Id*.

A party can substantially invoke the judicial process when it participates in full discovery, files motions going to the merits, and waits until the eve of trial to seek arbitration. *In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 693 (Tex. 2008) (citing *In re Vesta Ins. Group*, 192 S.W.3d 759, 764 (Tex. 2006)). But the strong presumption against waiver of arbitration renders this hurdle a high bar. *Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014). In close cases, the strong presumption against waiver should govern. *Cooper Indus.*, 2015 WL 5025812, at *10 (citing *Perry Homes*, 258 S.W.3d at 593).

18

We must decide waiver on a case-by-case basis by assessing the totality of the circumstances. *See Kennedy Hodges*, 433 S.W.3d at 545. The party's conduct must be unequivocally inconsistent with claiming a known right to arbitration. *Cooper Indus.*, 2015 WL 5025812, at *10. The supreme court has considered such nonexclusive factors as (1) when the movant knew of the arbitration clause and the length of delay before seeking arbitration; (2) how much discovery was conducted, who initiated it, and whether it related to the merits rather than arbitrability or standing; (3) how much of the discovery would be useful or unavailable in arbitration; (4) how much pretrial activity related to the merits rather than arbitrability or jurisdiction and how much time and expense has been incurred in litigation; (5) whether the movant sought judgment on the merits; (6) whether the movant filed affirmative claims or dispositive motions; (7) whether the movant sought or opposed arbitration earlier in the case; (8) whether activity in court would be duplicated in arbitration; (9) whether the movant is a plaintiff or a defendant; and (10) when the case was set for trial.[15] *See Kennedy Hodges*, 433 S.W.3d at 545; *Perry Homes*, 258 S.W.3d at 591-92. Further, the substantial invocation of the litigation process must also have prejudiced the opposing party. *Kennedy Hodges*, 433 S.W.3d at 545. To establish prejudice, the party asserting waiver must also show he will suffer inherent unfairness in terms of delay, expense, or damage to his legal position resulting from his opponent forcing him to litigate an issue and later seeking to arbitrate that same issue. *Id*.

Pham contends that the Garg Parties substantially invoked the judicial process because (1) they knew about the arbitration clause from the beginning of the litigation, but chose to wait until "the eve of trial and after [Pham] sought

---

[15] We note, as addressed below, that some of these factors relate to substantial invocation of the judicial process while some relate to prejudice. *See G.T. Leach Builders*, 458 S.W.3d at 515.

summary judgment on the merit[s] to invoke the arbitration clause"; (2) they participated in extensive discovery and other pretrial activity related to the merits of the litigation; (3) the discovery will not be useful in arbitration; and (4) they sought judgment on the merits. In considering the relevant factors, we note that the Garg Parties did not elect to resolve their disputes with Pham in court; rather, Pham brought claims against the Garg Parties in this lawsuit. *See G.T. Leach Builders*, 458 S.W.3d at 512-13 (citing *Perry Homes*, 258 S.W.3d at 591 (noting that one factor is whether party seeking arbitration was plaintiff who chose to file suit or defendant responding to suit filed against it)).

**Knowledge of Arbitration Clause and Delay before Seeking Arbitration**. The parties do not dispute that the Garg Parties knew of the arbitration clause from the onset of this litigation. Pham sued the Garg Parties in 2010, but Pham's claims against the Garg Parties were not consolidated into this lawsuit until 2012. Pham did not present evidence of what transpired in the 2010 lawsuit other than his filing a motion for default judgment against Smith & Garg, LLC and Garg & Associates, PC, discussed below. Sarita Garg filed a special appearance in May 2014 alleging she was never served with Pham's petition in this lawsuit. On this record, it appears that the trial court has not disposed of the special appearance.

The Garg Parties filed their motion to compel arbitration in June 2014 subject to Sarita Garg's special appearance. They argue that their delay in filing the motion to compel was reasonable because Pham did not serve Smith & Garg, LLC and Garg & Associates, PC until 2011 and never properly served Sarita Garg.[16] The motion was filed seven months before the trial date, which Pham argues was

---

[16] The appellate record is incomplete and does not include the returns of service. In her special appearance, Sarita Garg argued that Pham never served her. Pham previously had served the corporate defendants in 2011 in the 2010 lawsuit. Pham responded to the special appearance that he served Sarita Garg in 2013, but she contends otherwise.

"on the eve of trial." We disagree.

Delay alone does not establish waiver. *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002). Although delay is relevant in a determination of whether a party has substantially invoked the judicial process, the focus is on the amount of pretrial activity and discovery related to the merits of the case during that time period.[17] *See, e.g., In re Vesta Ins. Group*, 192 S.W.3d at 763 (holding two year delay and participation in discovery did not establish waiver); *see also Cooper Indus.*, 2015 WL 5025812, at *11 (holding 28 month "inexplicable delay" in moving to compel arbitration and participation in discovery did not establish waiver).

In *Perry Homes*, the supreme court held that the movants waived their right to arbitration because they participated in the lawsuit for 14 months, "changed their minds and requested arbitration . . . shortly before the . . . trial setting," and their "change of heart . . . unquestionably delayed adjudication of the merits." 258 S.W.3d at 596. In reaching its conclusion, the court acknowledged that waiting until the eve of trial and moving for arbitration "very late in the trial process" can result in waiver. *Id*. The court acknowledged that the rule that one cannot wait until the eve of trial is not limited to the evening before trial: it is a rule of proportion that may be implicated depending on how late the motion to compel arbitration is filed in the litigation process. *Id*.

As discussed more fully below, the motion to compel arbitration was not filed late in the litigation process under these circumstances. Trial was scheduled to

---

[17] Delay also may be a factor in whether the nonmovant has suffered prejudice. *G.T. Leach Builders*, 458 S.W.3d at 515. But delay alone, even if it is substantial, is not enough to show prejudice. *Id*. Waiver can be implied from a party's unequivocal conduct, but not from inaction. *Id*.

commence seven months after the motion was filed.[18] As discussed below, very little litigation related to the merits of the case had occurred. Sarita Garg disputes that she was served with process, and her special appearance is still pending. The motion for default judgment is not related to the merits and became moot when the corporate defendants answered the 2010 lawsuit. The only motion related to the merits—a motion for summary judgment—was filed by Pham. These are not facts showing that the motion to compel was filed late in the litigation process. *See Ground Force Const., LLC v. Coastline Homes, LLC*, No. 14-13-00649-CV, 2014 WL 2158160, at *5-7 (Tex. App.—Houston [14th Dist.] May 22, 2014, no pet.) (mem. op.) (holding movant did not wait until eve of trial to seek arbitration when trial was five months away and nonmovant failed to meet "heavy burden" to establish waiver because nonmovant did not show, among other things, amount of discovery conducted or that movant engaged in litigation related to merits of nonmovant's claims).

**Pretrial Activity Related to Merits of Case.** Our review of the record shows that little pretrial activity related to the merits of the case was conducted before the Garg Parties filed their motion to compel arbitration, and almost none of it was conducted by the Garg Parties:

- A former client filed this lawsuit in 2008, and Pham, Smith & Garg, LLC, and Sarita Garg, as defendants, filed a motion to compel the plaintiff's claims to arbitration, which the trial court denied. The case

---

[18] We acknowledge that several months before trial can be on the eve of trial for purposes of compelling arbitration under certain circumstances, but there has to be a showing that the delay in seeking arbitration required the nonmovant to incur additional expense in participating in litigation and then arbitration. *Cf. Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 938 F.2d 1574, 1577 (2d Cir. 1991) (holding four months before trial was "eve" when defendants did not seek arbitration until eighteen months after filing answer and four months before trial); *Citizens Nat'l Bank v. Bryce*, 271 S.W.3d 347, 357 (Tex. App.—Tyler 2008, no pet.) (holding eight weeks before trial was "eve" when parties had already conducted full discovery and filed motions going to the merits of the litigation).

22

was abated pending appeal.

- Pham sued the Garg Parties in the 2010 lawsuit.

- This case was reinstated in May 2011. Trial was set for October 2011. Sarita Garg filed a motion for continuance of that trial date, which the trial court granted.[19]

- In September 2011, Pham filed a motion for default judgment against Smith & Garg, LLC and Garg & Associates, PC in the 2010 lawsuit. Prior to the hearing on the motion, the corporate defendants answered suit.

- The original plaintiff in this case nonsuited her claims in January 2012. The trial court consolidated this lawsuit with the 2010 lawsuit in February 2012.

- Several motions for continuance of trial dates were filed jointly by the parties after February 2012.

- In May 2014, Sarita Garg filed a special appearance, arguing that she was never served with Pham's petition in this lawsuit, and seeking reconsideration of the trial court's order partially granting Pham's motion to compel discovery responses.[20]

- Also in May 2014, Pham filed a motion for summary judgment against Sarita Garg.

For purposes of our analysis, we consider only pretrial activity that occurred after Pham's claims against the Garg Parties were consolidated into this lawsuit and any evidence in the record regarding pretrial activity in the 2010 lawsuit. Pham presented no evidence of any pretrial activity in the 2010 lawsuit other than the motion for default judgment he filed against Smith & Garg, LLC and Garg &

---

[19] There is no indication in the appellate record that Pham had any claims pending against the Garg Parties in this lawsuit at that time.

[20] Venue and jurisdictional motions do not constitute substantial invocation of the judicial process because they do not relate to the merits of the case. *Cooper Indus.*, 2015 WL 5025812, at *11. There is no ruling on the special appearance in the appellate record.

Associates, PC. Pham had the burden to establish that the Garg Parties substantially invoked the litigation process. *See G.T. Leach Builders*, 458 S.W.3d at 511-12. Accordingly, we limit our analysis to the motion for default judgment in the 2010 lawsuit and pretrial activity occurring after the February 2012 consolidation, which consisted of motions for trial continuance filed jointly by the parties, Sarita Garg's special appearance, and Pham's motion for summary judgment.

Pretrial activity consisting of motions for trial continuance and Sarita Garg's special appearance do not relate to the merits of the case. *See Cooper Indus.*, 2015 WL 5025812, at *11. Neither does Pham's motion for default judgment, in which Pham sought judgment based on procedural default, without an adjudication on the merits. *See Sutherland v. Spencer*, 376 S.W.3d 752, 756 (Tex. 2012) (acknowledging a default judgment is based on procedural default rather than an adjudication on the merits). The only motion relating to the merits of the case—the motion for summary judgment--was filed by Pham and does not weigh in favor of finding waiver. *See Vesta Ins. Group*, 192 S.W.3d at 763-64 (noting pretrial costs incurred by party opposing arbitration were "largely self-inflicted" because he sent more discovery requests than he received and amended his petition at least eleven times and acknowledging that although allowing a party to "file motions going to the merits," among other things, "defeats the FAA's goal of resolving disputes without the delay and expense of litigation," proponents of arbitration did not do so when they only filed a motion to dismiss based on standing and engaged in limited discovery).

**Discovery Conducted**. When they answered suit in 2011, Smith & Garg, LLC and Garg & Associates, PC served standard requests for disclosure on Pham. *See* Tex. R. Civ. P. 194.2. In October 2013, the Garg Parties served another set of

24

requests for disclosure on Pham. Also in October 2013, Pham served interrogatory, disclosure, admission, and production requests on Sarita Garg. Sarita Garg responded to Pham's discovery requests, and the Garg Parties moved to compel Pham's responses to their requests for disclosure in 2014.

Neither responding to discovery nor propounding limited written discovery waives arbitration. *G.T. Leach Builders*, 458 S.W.3d at 514. Form requests for disclosure seek basic information about a lawsuit, and serving them does not waive the right to arbitration. *Id*. The Garg Parties' limited participation in discovery weighs against a finding of substantial invocation of the judicial process. *See, e.g., Vesta Ins. Group*, 192 S.W.3d at 763 (holding serving "standard requests for disclosure," noticing four depositions, and serving a request for production did not waive arbitration absent proof regarding extent of requests and whether they addressed merits or arbitrability); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998) (holding that parties did not waive arbitration despite "propounding one set of eighteen interrogatories and one set of nineteen requests for production"); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (holding that propounding interrogatories and a request for production, noticing a single deposition, and agreeing to a trial resetting did not amount to a waiver of arbitration).

**Judgment on the Merits Not Sought**. Pham argues that the Garg Parties sought judgment on the merits by requesting a hearing on Pham's motion for summary judgment. We disagree. The Garg Parties merely sought a hearing and opposed Pham's motion. They did not file their own motion for summary judgment seeking a determination on the merits of Pham's claims. *See Ground Force Const.*, 2014 WL 2158160 at *6 (concluding defendant's motion for summary judgment on defensive theories did not seek judgment on the merits of plaintiff's claims).

**No Showing of Prejudice**. Pham also has not met his burden to show that he suffered prejudice as a result of the Garg Parties' litigation conduct. Detriment or prejudice, in this context, refers to an inherent unfairness caused by a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage. *G.T. Leach Builders*, 458 S.W.3d at 515. Prejudice may result when a party seeking arbitration first sought to use the judicial process to gain access to information that would not have been available in arbitration. *Id*.

Pham argues that he suffered prejudice because the Garg Parties waited until the eve of trial to file their motion to compel arbitration and Pham lost time and financial resources in prosecuting his claims. As discussed above, delay also may be a factor in whether the nonmovant has suffered prejudice. *Id*. But even substantial delay will not show prejudice because waiver cannot be implied from a party's inaction. *Id*. As discussed above, the only pretrial activity related to the merits of the litigation that caused Pham to incur lost time and expenses relates to Pham's own actions. Pham has failed to show how the Garg Parties' delay in filing the motion to compel prejudiced him.

Pham also argues that he has suffered prejudice because the Garg Parties delayed in responding to his discovery requests and provided incomplete responses and thus the discovery conducted will not be useful in arbitration.[21] Whether discovery would be useful in arbitration is relevant to whether the movant has engaged in "manipulation of litigation [to its] advantage and another's detriment." *Perry Homes*, 258 S.W.3d at 597. Our review of the record reveals that Pham propounded discovery only to Sarita Garg. Pham argues that the responses do "not provide any detail regarding how [Pham's] financial investment was utilized and

---

[21] The Garg Parties concede the discovery will not be useful in arbitration, but only because it is not directed to the merits of Pham's claims.

distributed," but he does not elaborate on how these responses establish that the Garg Parties have manipulated the litigation process to their advantage and Pham's detriment. *See id.*

Pham also does not elaborate on what information the responses provided. Knowing the content of discovery is important in determining prejudice because when only a minimal amount of discovery has been conducted, which may also be useful for the purpose of arbitration, we may not infer waiver based upon prejudice. *Ground Force Const.*, 2014 WL 2158160, at *7 (citing *Bruce Terminix*, 988 S.W.2d at 704). We acknowledge that Pham attached the discovery responses as an exhibit to his response to the motion to compel arbitration. However, Pham had the burden to show that he suffered unfair prejudice as a result of the Garg Parties' attempt to gain access to information through discovery that would not have been available in arbitration. *See G.T. Leach Builders*, 458 S.W.3d at 515. Moreover, Pham has not established that the Garg Parties served a single request for production, interrogatory, or deposition notice in this case. *See id.* Pham likewise has not presented evidence that anything revealed in discovery would not have been produced in arbitration or presented evidence of attorneys' fees or expenses he incurred that were attributable to the Garg Parties' participation in discovery.[22] *See Ground Force Const., LLC*, 2014 WL 2158160, at *7. On this record, Pham has not shown how the Garg Parties manipulated the litigation process to their advantage and Pham's detriment. *See Perry Homes*, 258 S.W.3d at 597.

---

[22] Our review of the responses reveals that they include information that likely would be useful in arbitration. Sarita Garg provided tax returns from Smith & Garg, LLC and also admitted that her partner Brian Smith had been using firm funds for personal expenses and she locked Smith out of the bank accounts. She also stated that Pham's $100,000 investment "went towards paying Pham's own payroll and startup and ongoing overhead costs for the Long Beach, California office." She further indicated that Pham's employment was terminated for forming his own firm.

**Conclusion**. Weighing the factors discussed above based on a totality of the circumstances, we conclude that Pham has not met his burden of proving that the Garg Parties substantially invoked the judicial process to the extent required to demonstrate a waiver of their right to arbitration and their participation in the litigation has not caused Pham the kind of prejudice necessary to clear the "high hurdle" of waiver. *See G.T. Leach Builders*, 458 S.W.3d at 515. Accordingly, the Garg Parties have not impliedly waived their right to demand arbitration in this case.

We sustain the Garg Parties' second issue.

### C. No Evidence of Unconscionability Based on Cost of Arbitration

Having concluded that there was no waiver of arbitration, we next consider the Garg Parties' third issue regarding whether the arbitration clause was unconscionable. Pham argues the arbitration clause is substantively unconscionable because of the cost of arbitration under the AAA.

A court may not enforce an arbitration agreement if it finds the agreement was unconscionable at the time it was made. Tex. Civ. Prac. & Rem. Code § 171.022. The test of substantive unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006) (citing *In re FirstMerit Bank, NA.*, 52 S.W.3d at 757). Federal and state courts have recognized the possibility that the excessive costs of arbitration might, under certain circumstances, render an arbitration agreement unconscionable. *See Olshan Found. Repair Co. v Ayala*, 180 S.W.3d 212, 215 (Tex. App.—San Antonio 2005, pet. denied) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000) and *In re FirstMerit Bank, N.A.*, 52

28

S.W.3d at 757)). However, given the strong policy favoring arbitration agreements, the party opposing the arbitration must also prove the likelihood of incurring such costs. *Id.* (citing *FirstMerit Bank, N.A.*, 52 S.W.3d at 757). While neither state nor federal courts have specified how detailed a showing must be of high arbitration costs, both the United States and Texas Supreme Courts have held that "some specific information of future costs is required." *FirstMerit Bank, N.A.*, 52 S.W.3d at 756 (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (holding that the mere possibility or "risk" that a plaintiff might bear such costs was too speculative)).

Pham provided no cost amount, estimated or verified, below or on appeal, to support his argument. Instead, he speculates that the cost of arbitration may be excessive. Pham concedes that he cannot determine the cost of arbitration with the AAA, but guesses that the parties may incur the expense of a forensic accountant "making the cost of arbitration . . . exuberant [sic]."[23] Pham also argues that the Garg Parties knew the cost of arbitration when the parties executed the Partnership Agreement and used the arbitration clause as part of an "elaborate scheme" to defraud him. Pham presented no evidence in support of these assertions and thus has not met his burden of providing some evidence of excessive costs of arbitration. *See id.* at 757 ("Because the record contains no specific evidence that the [plaintiffs] will actually be charged excessive arbitration fees, we conclude that there is legally insufficient evidence that [they] would be denied access to arbitration based on excessive costs.").

We sustain the Garg Parties' third issue.

---

[23] Pham attached a copy of the "AAA Arbitration Roadmap" as an exhibit to his response to the motion to compel arbitration, but concedes that it does not provide "specific cost estimates" or "information from which a reasonably close estimate can be calculated."

## *Conclusion*

We conclude that we have jurisdiction over this appeal, Pham's claims are all within the scope of a valid arbitration clause, Garg & Associates, PC can compel Pham to arbitration, the Garg Parties did not waive their right to arbitration, and the arbitration agreement was not unconscionable due to the cost of arbitration. Accordingly, we reverse the trial court's order denying the Garg Parties' motion to compel arbitration, render judgment ordering arbitration of Pham's claims against the Garg Parties, and remand this case for proceedings consistent with this opinion, including the grant of an appropriate stay. *See* Tex. Civ. Prac. & Rem. Code § 171.025(a).


/s/Martha Hill Jamison
Justice


Panel consists of Chief Justice Frost and Justices Jamison and Busby.