**Affirmed in Part and Reversed and Remanded in Part and Opinion filed July 9, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00872-CV

---

### EDWIN RODRIGUEZ AND TONYA RODRIGUEZ, Appellants

### V.

### TEXAS LEAGUER BREWING COMPANY L.L.C. AND NATHAN REES, Appellees

---

**On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 17-DCV-240581**

---

## OPINION

Appellants, Edwin Rodriguez and Tonya Rodriguez, ("Rodriguezes") appeal the trial court's final order and judgment, which granted an application to compel arbitration and dismissed the suit. We affirm the trial court's order, except that we reverse the order to the extent that it dismisses and compels arbitration of the Rodriguezes' claim for breach of the alleged loan agreement, and remand for proceedings consistent with this opinion.

## BACKGROUND

On June 12, 2015, Texas Leaguer Brewing Company, LLC ("Texas Leaguer") was formed, with Nathan Rees as manager. Texas Leaguer's purpose is to engage in the business of owning and operating a brewery.

On or about April 30, 2016, the Rodriguezes signed an Amended and Restated Company Agreement ("First Agreement"), under which they obtained ownership units (representing 7% ownership) in Texas Leaguer and contributed capital of $150,000. In section 9.4 of the First Agreement, the parties agreed to arbitrate "disputes aris[ing] out of or relat[ing] to this Agreement, or the breach thereof."

Texas Leaguer decided to seek additional funding by applying for a Small Business Administration ("SBA") loan. To assist Texas Leaguer in obtaining such a loan and to increase their ownership, the Rodriguezes signed a Second Amended and Restated Company Agreement ("Second Agreement") dated July 29, 2016. According to the Rodriguezes, the Second Agreement modified the First Agreement in two ways. First, the Second Agreement states that the Rodriguezes "agree to co-sign for an initial SBA loan in a maximum amount of $560,000 to be taken on Company's behalf." Second, and in exchange for this promise, the Second Agreement increased the Rodriguezes' ownership to 14.5%. The Second Agreement contains the same arbitration clause (section 9.4) as the First Agreement.

On December 22, 2016, Nathan Rees, on behalf of Texas Leaguer sent a letter to the Rodriguezes stating that Texas Leaguer was exercising its rights under section 11.3 of the Second Agreement to terminate the Rodriguezes' membership or ownership in Texas Leaguer because of the Rodriguezes' refusal to co-sign a proposed SBA Loan of up to $556,000 (as the Rodriguezes promised to do in the Second Agreement).

On March 29, 2017, the Rodriguezes filed suit against Texas Leaguer and Nathan Rees ("Leaguer parties"), alleging claims for securities fraud, breach of and specific performance of the First Agreement to recognize their membership in Texas Leaguer, conversion, and breach of a $20,000 loan agreement.

The Leaguer parties filed an application to compel arbitration. The Rodriguezes filed a response in opposition, to which the Leaguer parties filed a reply.

On October 18, 2017, the trial court signed an order granting the Leaguer parties' application to compel arbitration on all claims and dismissing the Rodriguezes' suit without prejudice.

## ANALYSIS

### I.    Standard of Review

"Generally, we review a trial court's decision to grant or deny a motion to compel arbitration under an abuse of discretion standard." *Enter. Field Servs., LLC v. TOC-Rocky Mountain, Inc.*, 405 S.W.3d 767, 773 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Under this standard, we defer to a trial court's factual determinations if they are supported by evidence, but we review a trial court's legal determinations *de novo*. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). "Whether an arbitration agreement is enforceable is subject to de novo review." *Id*.

### II.    The Texas Arbitration Act

In their application to compel arbitration, the Leaguer parties state the Second Agreement does not specify arbitration under either the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA"), and the transactions do not involve interstate commerce; thus, the Texas Arbitration Act applies. The Rodriguezes did not contest this assertion either in the trial court or on appeal and, therefore, we

assume this appeal is governed by the TAA. However, the issue of arbitrability is subject to a virtually identical analysis under either the FAA or the TAA.[1] When applying the TAA, Texas courts look to federal case law construing the FAA for guidance because of the similarities between the two acts. *Collins v. Tex Mall, L.P.*, 297 S.W.3d 409, 417 (Tex. App.—Fort Worth 2009, no pet.).

Generally, a party seeking to compel arbitration must establish that a valid arbitration agreement exists and that the claims at issue fall within the scope of that agreement. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015). Unless the parties clearly and unmistakably agree to submit threshold questions of arbitrability to arbitration, these issues are to be resolved by courts. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). "The trial court conducts a summary proceeding to make the gateway determination of arbitrability." *Human Biostar, Inc. v. Celltex Therapeutics Corp.*, 514 S.W.3d 844, 848 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). "These 'gateway matters' include whether the parties agreed to arbitrate and whether a claim or dispute is encompassed in the agreement to arbitrate." *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229 n.4 (Tex. App.—Dallas 2010, pet. denied) (citing *P. McGregor Enters., Inc. v. Denman Bldg. Prods., Ltd.*, 279 S.W.3d 717, 722 n.9 (Tex. App.— Amarillo 2007, pet. denied)). "Once the arbitration movant establishes a valid arbitration agreement that encompasses the claims at issue, a trial court has no discretion to deny the motion to compel arbitration unless the opposing party proves a defense to arbitration." *Human Biostar, Inc.*, 514 S.W.3d at 848 (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753-54 (Tex. 2001) (orig. proceeding)).

---

[1] *See Garg v. Pham*, 485 S.W.3d 91, 101 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *e.g.*, *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229 n.4 (Tex. App.—Dallas 2010, pet. denied); *ODL Servs., Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399, 418 (Tex. App.— Houston [1st Dist.] 2008, no pet.)).

## III. Agreement Arbitration Provision

Both the First and Second Agreement, in section 9.4, provide for arbitration of disputes arising out of or relating to the Agreement or the breach thereof:

a. If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through direct discussions within fourteen (14) days of first consideration, the Members and Manager agree to first endeavor to settle the dispute in an amicable manner by mediation administered by the American Arbitration Association (the "AAA") under its Commercial Mediation Rules, before resorting to arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules (except otherwise provided herein) by written notice to the other Members and Managers, as applicable. The Member or Manager electing arbitration shall by such notice to other Members or Manager name an arbitrator. The second arbitrator shall be chosen by the noticed Members or Manager, as applicable, within fourteen (14) days after such notice. If the noticed Members or Managers do not appoint such second Arbitrator, then the AAA shall be requested to submit a list of five (5) persons to serve as the second arbitrator and the first arbitrator shall select a name from such list within five (5) days of its submission; a third arbitrator shall be selected by the first and second arbitrators within five (5) days of the selection of the first and second arbitrators, and if the arbitrators fail to so select a third arbitrator, then the third arbitrator shall be selected from the remaining members of the list of five (5) received from AAA through the process of each of the first two (2) arbitrators in turn striking names from the list until one (1) name remains.

b. The decision of any two (2) of the arbitrators shall be final and binding upon the Members and Manager. The arbitrators shall determine the rights and obligations of the Members and Manager according to this Agreement and the substantive laws of Texas . . . . The decision of the arbitrators shall be final and binding on the Members and Manager and judgment thereon may be entered by any court having jurisdiction . . . .

## IV. The Rodriguezes' Arguments

The Rodriguezes present us with five arguments to consider on appeal:

1. Section 9.4 is not an agreement to arbitrate;

2. Mediation is a condition precedent to arbitration;

3. The Leaguer parties' disputed termination of the Rodriguezes' membership under section 11.3.c of the Second Agreement precludes the Leaguer parties from enforcing section 9.4's arbitration provision;

4. The Second Agreement lacks consideration and is therefore unenforceable; and

5. The Rodriguezes' claims for securities fraud and breach of the loan agreement are outside of the scope of section 9.4's arbitration provision.

As discussed below, each of these arguments is either without merit or has been waived, except for one (wherein we conclude that the Rodriguezes' claim for breach of the alleged loan agreement is outside the scope of section 9.4).

### A. Section 9.4 is an agreement to arbitrate.

The Rodriguezes argue that section 9.4 is not an agreement to arbitrate, pointing us to *Bates v. MTH Homes-Texas, L.P.*, 177 S.W.3d 419 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding). In *Bates*, the only mention of arbitration in the parties' contract was as follows:

> IF PURCHASER HAS A COMPLAINT CONCERNING A CONSTRUCTION DEFECT ARISING FROM THE PERFORMANCE OF THIS CONTRACT AND THAT DEFECT HAS NOT BEEN CORRECTED THROUGH NORMAL WARRANTY SERVICE, THE PURCHASER MUST PROVIDE NOTICE REGARDING THE DEFECT TO THE BUILDER BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, NOT LATER THAN THE 60TH DAY BEFORE THE DATE THE PURCHASER INITIATES A CLAIM TO RECOVER DAMAGES IN AN ARBITRATION

6

PROCEEDING.

*Id.* at 423. The First Court of Appeals noted that although the clause refers to arbitration, it does not limit the parties' rights to arbitration only; rather, the clause (a statutorily required disclosure statement) provides the notice procedures to follow if a party seeks damages in an arbitration proceeding. *Id.* at 424. The court held this clause "is not sufficient to constitute an agreement to arbitrate because it does not clearly indicate the intent to arbitrate." *Id.*

The Rodriguezes argue that, although the parties in section 9.4 agreed to mediate before arbitrating, they did not agree to arbitrate following mediation. The Rodriguezes contend that this is so because section 9.4.a refers to arbitration as an election, *i.e.*, the party "electing" arbitration gives notice to the other parties and appoints an arbitrator.

We disagree with the Rodriguezes' interpretation of this clause. Section 9.4, in subsection a, clearly states that, if one of the members elects arbitration by sending written notice, the parties are required to select three arbitrators through a specified process, and, in subsection b, states "[t]he decision of any two (2) of the arbitrators shall be final and binding upon the Members and Manager." Unlike the agreement in *Bates*, section 9.4 reflects a clear intent that, if the parties are unable to settle their dispute through mediation, to submit to binding arbitration at the election of either party. Section 9.4 does not require consent of the other party when one party elects binding arbitration.

**B.** **Even assuming mediation is a condition precedent to arbitration under section 9.4, the Rodriguezes waived this condition by filing suit instead of requesting mediation.**

The Rodriguezes argue that section 9.4 indicates that mediation is a condition precedent to arbitration, and that the trial court lacked authority to compel arbitration because mediation has not occurred. "Typically, questions of whether prerequisites

7

to arbitration have been fulfilled are left to the arbitrators to resolve." *Amir v. Int'l Bank of Commerce*, 419 S.W.3d 687, 692 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "If, however, there is clearly established proof that a strictly procedural requirement has not been met and that procedural requirement precludes arbitration, a court can deny a motion to compel arbitration on this ground." *Id.* "As an example, a trial court cannot compel arbitration when the provision requires the parties to mediate before arbitration." *Id.*; *see also In re Igloo Prods. Corp.*, 238 S.W.3d 574, 581 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding [mand. denied]) (holding that trial court did not abuse its discretion by denying arbitration when the parties' agreement provided "any and all . . . disputes that cannot first be resolved through the Company's internal dispute resolution procedures or mediation must be submitted to binding arbitration," and relator did not prove that the claims could not be so resolved).

However, even when the agreement requires the parties to mediate before arbitration, a party who proceeds first to litigation waives the right to mediation and cannot assert the mediation provision as a condition precedent to arbitration. *See LDF Constr., Inc. v. Bryan*, 324 S.W.3d 137, 146–47 (Tex. App.—Waco 2010, no pet.) ("Bryan cannot unilaterally skip the efforts to resolve the dispute by other methods by skipping directly to litigation and thereby avoid the arbitration provision."); *Glob. Evangelism Educ. Ministries, Inc. v. Caddell*, No. 04-08-00686-CV, 2009 WL 398255, at *2 (Tex. App.—San Antonio Feb. 18, 2009, no pet.) (mem. op.) (Caddell waived his right to first proceed through mediation by filing suit — rather than seeking mediation — and cannot rely on the failure of conditions precedent to evade being now compelled to arbitration); *Nw. Constr. Co. v. Oak Partners, L.P.*, 248 S.W.3d 837, 852 (Tex. App.—Fort Worth 2008, pet. denied) (compelling party to arbitration, even though condition precedent of mediation had

not been fulfilled, because party filed suit without seeking mediation pursuant to the agreement). Because the Rodriguezes filed suit without first seeking mediation, they have waived their right under section 9.4 to insist on mediation before arbitration and cannot rely on their own failure to request mediation as a condition precedent to arbitration.

**C. The Leaguer parties' disputed termination of the Rodriguezes' membership under section 11.3.c of the Second Agreement did not preclude the Leaguer parties from enforcing section 9.4's arbitration provision.**

The Rodriguezes argue that the purported termination of their membership in Texas Leaguer under section 11.3.c of the Second Agreement precludes the Leaguer parties from enforcing the arbitration provisions in section 9.4 because that section provides that only a Member or the Manager can elect arbitration (and that they could not initiate arbitration under section 9.4 after their membership was terminated because they no longer qualified as "a Member"). Specifically, section 11.3.c (the clause the Leaguer parties invoked to terminate the Rodriguezes' membership) provides that a terminated member has only "the rights and obligations stated in section 10.8 (Rights and Obligations of Non-Member Holder)." Further, section 10.8 states that a Non-Member Holder "shall not have the right to participate in Member Actions or any other rights of a Member." Therefore, the Rodriguezes argue, termination of their membership also terminated their rights and obligations to arbitrate under section 9.4.

The Rodriguezes' argument fails for two reasons. First, in their original petition, they allege: (1) the Leaguer parties breached the First Agreement by purporting to terminate the Rodriguezes' membership rights in violation of the First Agreement,[2] (2) they are entitled to specific performance of the First Agreement,

---

[2] The Rodriguezes contend the Leaguer parties were not entitled to terminate the

9

including recognition of the Rodriguezes' membership rights, and (3) they are members of Texas Leaguer and are therefore entitled to a winding up and termination of Texas Leaguer as provided for in section 11.314 of the Texas Business Organization Code. Thus, the Rodriguezes dispute they breached the Second Agreement and deny their membership has been terminated. This dispute between the parties as to which of the parties breached and whether the Rodriguezes' membership has effectively been terminated is a dispute that either the Rodriguezes or the Leaguer parties could elect to arbitrate under section 9.4 because it is a dispute that relates to the "Agreement or the breach thereof." Because the Rodriguezes continue to claim to be members and the parties' dispute regarding their status as members has not yet been determined, both the Rodriguezes and the Leaguer parties have a right to arbitrate these disputes as required by section 9.4.

Second, the Rodriguezes' argument fails because sections 11.3.c and 10.8 do not state or clearly indicate that, when a member has been terminated for breaching the Second Agreement (and that member denies both breach and termination under the Agreement), the member no longer has a right or obligation to arbitrate a dispute under section 9.4. Instead, section 10.8 states only that a Non-Member Holder "shall not have the right to participate in Member Actions or any other rights of a Member." Section 10.8 makes no mention of section 9.4 or arbitration; it does not express a clear intent to waive the right and obligation to arbitrate in the event of a disputed termination under section 11.3.a. The trial court was not required to find waiver because the record does not show the Leaguer parties clearly repudiated their right to compel arbitration as provided for by section 9.4 or engaged in conduct that is inconsistent with a claim to that right. *See G.T. Leach Builders*, 458 S.W.3d at 511.

---

Rodriguezes' membership under section 11.3.c because they have not breached the [First or Second] Agreement.

**D.** **Regardless of whether the Second Agreement lacks consideration, the trial court's arbitration judgment may be upheld based on the arbitration clause of the First Agreement, the validity of which the Rodriguezes do not challenge.**

Like other contracts, arbitration agreements must be supported by the exchange of consideration. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding). The Rodriguezes argue the Second Agreement is unenforceable because of the lack of mutual consideration and, therefore, the trial court could not compel arbitration under the Second Agreement as the Leaguer parties requested.[3]

The trial court did not make any findings of fact or conclusions of law; nor did it specify which factual or legal ground or Agreement it was relying on when it compelled arbitration. In such cases, the judgment of the trial court implies all necessary fact findings in support of the judgment and we will affirm the judgment if it can be upheld on any legal theory that finds support in the evidence. *See In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984); *Bigham v. Se. Tex. Envtl., LLC*, 458 S.W.3d 650, 673 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Regardless of whether the Second Agreement lacks consideration, the trial

---

[3] The Leaguer parties argue that the parties have agreed to submit issues regarding the validity of the Second Agreement, such as consideration, to arbitration. Section 9.4 provides that arbitration is to be administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and the Leaguer parties assert R-7A of those rules provides that the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the scope or validity of the arbitration agreement. The express incorporation of rules that empower the arbitrator to determine arbitrability — such as the AAA Commercial Arbitration Rules — is clear and unmistakable evidence of the parties' intent to allow the arbitrator to decide such issues. *See, e.g., Trafigura Pte. Ltd. v. CNA Metals Ltd.*, 526 S.W.3d 612, 618 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 802 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We may not consider this argument because the record does not show the trial court was presented with evidence of the content of the AAA Commercial Arbitration Rules.

court's arbitration judgment may be upheld based on the arbitration clause (section 9.4) of the First Agreement, the validity of which the Rodriguezes do not challenge. In fact, almost all the claims alleged in the Rodriguezes' petition refer to and are predicated on the First Agreement.

### E. The securities fraud claim is within the scope of section 9.4, but the claim for breach of the loan agreement is not.

The Rodriguezes argue that two of their claims are not within the scope of section 9.4, namely, their claim for fraud under the Texas Securities Act[4] and their claim for the Leaguer parties' breach of an agreement to repay a $20,000 loan the Rodriguezes allegedly made to Texas Leaguer.

"Determining whether a claim falls within the scope of an arbitration agreement involves the trial court's legal interpretation of the agreement, and we review such interpretations de novo." *McReynolds v. Elston*, 222 S.W.3d 731, 740 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Courts should resolve any doubts as to the agreement's scope in favor of arbitration. *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011). A court should not deny arbitration unless the court can say with positive assurance that an arbitration clause is not susceptible to an interpretation that would cover the claims at issue. *See Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995); *Osornia v. AmeriMex Motor & Controls, Inc.*, 367 S.W.3d 707, 712 (Tex. App.—Houston [14th Dist.] 2012, no pet.). If the facts alleged touch matters, have a significant relationship to, are inextricably enmeshed with, or are factually intertwined with the contract containing

---

[4] "A person who offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security." Tex. Rev. Civ. Stat. Ann. art. 581-33.

12

the arbitration agreement, the claim is arbitrable. *Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 108 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The scope of an arbitration clause that includes all "disputes," and not just claims, is very broad and encompasses more than claims based solely on rights originating exclusively from the contract. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018).

Both the First and Second Agreement, in section 9.4, provide for arbitration if "a dispute arises out of or relates to this Agreement or the breach thereof."

### 1. The Securities Fraud Claim

In support of their fraud claim under the Texas Securities Act, the Rodriguezes allege that, in connection with the sale of membership interests in Texas Leaguer to the Rodriguezes, the Leaguer parties made material untrue representations and omitted to state material facts.

Claims of this kind, which allege fraudulent inducement, are within the scope of an agreement requiring the arbitration of claims arising out of or relating to the agreement. *See Dewey v. Wegner*, 138 S.W.3d 591, 602-03 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that plaintiff's claim that he was fraudulently induced to enter into the subscription agreement by the Deweys' representations is within the scope of the agreement, which required arbitration of any claim arising out of or relating to this subscription agreement); *Capital Income Props.-LXXX v. Blackmon*, 843 S.W.2d 22, 23 (Tex. 1992) (orig. proceeding) (holding that partners' claims of fraudulently inducing partners to invest in the partnership were within scope of clause requiring arbitration of claims "arising out of" or "relating to" the partnership agreement); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (holding that the agreement to arbitrate "(a)ny controversy or claim arising out of or relating to this Agreement, or the breach thereof" is easily broad

13

enough to encompass Prima Paint's claim that its execution of the consulting agreement was procured by fraud).

### 2. The Loan Agreement Claim

The Rodriguezes' petition alleges that the Rodriguezes loaned Texas Leaguer $20,000 and that Texas Leaguer breached the loan agreement by failing to repay the loan after demand for payment. The Leaguer parties argue that the Rodriguezes' claim for loan repayment is within the scope of the arbitration agreement because the loan allegedly relates to the Rodriguezes' interests in Texas Leaguer; however, the Leaguer parties cite no evidence in support of this allegation. Neither the First nor Second Agreement mention the alleged loan agreement or impose an obligation on the Rodriguezes to loan money to Texas Leaguer. Because the record does not show that the alleged loan agreement arose from or relates to the First or Second Agreement, we conclude the trial court erred by implicitly finding that this claim is within the scope of section 9.4 and compelling arbitration of this claim.

### CONCLUSION

In sum, we overrule all the Rodriguezes' arguments, except for their argument that their claim for breach of the alleged loan agreement is outside the scope of section 9.4's arbitration provision.

We affirm the trial court's order compelling arbitration, except that we reverse the order to the extent that it dismisses and compels arbitration of the Rodriguezes' claim for breach of the alleged loan agreement, and remand for proceedings consistent with this opinion.

                  /s/     Meagan Hassan
                         Justice

Panel consists of Justices Christopher, Zimmerer, and Hassan.